**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

APEX PLUMBING SUPPLY,
INCORPORATED; HAROLD FALCHICK,
<u>Plaintiffs-Appellees,</u>

v.                                                              No. 97-1368

U.S. SUPPLY COMPANY,
INCORPORATED,
<u>Defendant-Appellant.</u>

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Alexander Williams, Jr., District Judge.
(CA-96-3362-AW)

Argued: December 1, 1997

Decided: April 22, 1998

Before WILKINSON, Chief Judge, JONES,
United States District Judge for the Western District of Virginia,
sitting by designation, and MICHAEL,
Senior United States District Judge for the
Western District of Virginia, sitting by designation.

_____

Affirmed by published opinion. Senior Judge Michael wrote the opin-
ion, in which Chief Judge Wilkinson and Judge Jones joined.

_____

**COUNSEL**

**ARGUED:** C. George Milner, C. GEORGE MILNER, P.C., Philadel-
phia, Pennsylvania, for Appellant. Philip Scott Friedman, IFSHIN &

FRIEDMAN, Washington, D.C., for Appellees. **ON BRIEF:** Gary S. Marx, David Kantrow, MARX & FRAME, Washington, D.C., for Appellees.

_____

**OPINION**

MICHAEL, Senior District Judge:

In this case we consider appeals from the district court's confirmation of an arbitration award. Here, we decide whether, in an action seeking enforcement of such an award, the Federal Arbitration Act confers permissive or mandatory venue on Federal courts in and for the district in which the award was made. As well, we decide whether, in this case, the district court erred in confirming the award. For the reasons stated herein, we affirm the district court.

I. FACTUAL AND PROCEDURAL BACKGROUND

In December 1994, appellant U.S. Supply ("U.S.") and appellee Apex Plumbing Supply ("Apex") entered into a Management Agreement ("Agreement"). In the Agreement, Apex, a Maryland corporation, gave U.S., a Pennsylvania corporation, the right to manage Apex for a renewable, one-year period, as well as an option to purchase Apex after six months. The Agreement stated that a purchase price would be determined using a specific formula in which, inter alia, inventory would be valued based on how recently it was acquired (i.e. the more recent the acquisition, the higher the relative value), and that in any case inventory more than a year old would be given no value. Joint Appendix ("JA") at 334. In addition, the Agreement required the parties to submit any dispute to arbitration by the American Arbitration Association of Philadelphia, Pennsylvania, and to enter any award made by the arbitrator "in the Court of General Jurisdiction as a judgement of such court." JA at 338.

In its management role, U.S., per the Agreement, underwrote Apex's expenses. As a result, in January 1995, Apex gave a security interest in inventory, receivables, fixtures, leasehold rights, and equipment to U.S. JA at 287. Harold Falchick, president of Apex, guaranteed Apex's debt to U.S. JA at 344-45.

2

Near the end of its first year managing Apex, U.S. exercised the option to buy Apex. Prior to this time, however, Apex had become dissatisfied with U.S.'s performance of its duties under the Agreement, and a dispute arose as to how the purchase price should be determined. As a result of the disagreement, U.S. filed for arbitration.

After receiving testimony and other evidence at a hearing, an arbitrator made an award of $179,284 to Apex. The arbitrator based this award on the following calculations: first, the arbitrator credited to Apex $9,000, the amount received by U.S. from an auction of Apex inventory, as well as $45,725 in accounts receivable collected by Apex, for a total of $54,725. Then, the arbitrator valued Apex's inventory on April 24, 1996 (the last day Apex was in business) at $258,446, and gave an additional credit of $25,219 to Apex for trade fixtures, goodwill, unpaid rent, and unpaid salaries, for a total of $283,665. The arbitrator finally took this figure and subtracted from it the amount owed by Apex to U.S. ($104,381) to reach the $179,284 owed by U.S. to Apex.

U.S. filed a petition to vacate the award in the Court of Common Pleas of Montgomery County, Pennsylvania. Apex removed the action to the United States District Court for the Eastern District of Pennsylvania. Apex then filed a petition to modify or confirm the award in the United States District Court for the District of Maryland. U.S. filed a motion objecting to venue in Maryland, but that motion was denied. The Maryland district court confirmed the arbitrator's award. The Pennsylvania district court then dismissed all proceedings without prejudice. This appeal followed.

II. DISCUSSION

U.S. challenges one major aspect of the arbitrator's ultimate award. At the arbitration hearing, U.S. had claimed that the value of Apex's inventory on April 24, 1996 was $52,199 and Apex, using a "computer run" from 1995, had claimed that the value, instead, was $408,821.71. According to U.S., the arbitrator's calculation of inventory was higher substantially than its figure because the arbitrator failed to deduct the value of all inventory over one year old. In addition, U.S. raises the threshold issue of whether venue in the U.S. District Court for the District of Maryland was proper to begin with such

3

that the confirmation action even could be heard. We address the issues in reverse order.

A. <u>Venue under the Federal Arbitration Act</u>

Section nine of the Federal Arbitration Act ("FAA"), the statute's venue provision, states, in pertinent part:

> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then . . . any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title. If no court is specified in the agreement of the parties, then such application <u>may</u> be made to the United States court in and for the district within which such award was made . . . .

9 U.S.C. § 9 (emphasis added).

The appellant contends now, as it did below, that the Maryland district court lacked proper venue to hear the appellees' confirmation petition. Rather, it argues, the U.S. District Court for the Eastern District of Pennsylvania should have been the exclusive Federal forum under the FAA because section nine mandates that a party bring any confirmation action in the district court in the district where the arbitration occurred. Because, again, Philadelphia served as the <u>situs</u> of the arbitration, exclusive venue would vest in a Pennsylvania district court under U.S.'s reading of section nine. Apex, on the other hand, insists that the statute means what it says--that a party "may" not only choose to confirm an award in the local U.S. district court, but in any other district court that has subject matter and personal jurisdiction. In any district court meeting the jurisdictional requirements, venue is permissive under section nine, Apex concludes. The court below read the statute as Apex does and concluded that the FAA's venue provision conferred upon it permissive, not mandatory, venue.[1]

_____

[1] We review this conclusion as to venue, like legal conclusions generally, <u>de novo</u>. <u>United States v. Newsom</u>, 9 F.3d 337, 338 (4th Cir. 1993).

4

Apex Plumbing Supply, Inc., et al. v. U.S. Supply Co., Inc., Civil No. AW-96-3362, Memorandum Opinion at 3-6 (D.Md. January 14, 1997) ("Mem. Op."). JA at 863-66.

To begin our analysis, we agree fully with the finding of the district court that, looking at the Agreement, ". . . it is undisputed that no particular court was specified where confirmation of the award could be sought." Mem. Op. at 3. JA at 863. The Agreement's choice of law provision did specify that Pennsylvania law would apply to certain arbitration matters,**2** but it in no way designated any one court as the exclusive forum in which a party could confirm an arbitration decision. Thus, because the parties themselves agreed to no particular forum, we address now whether the FAA confers permissive or mandatory venue on district courts to hear confirmation petitions when it states, "If no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made." 9 U.S.C. § 9.

The issue is one of first impression in this circuit. While the circuits currently are split on the question (i.e. , whether, in the absence of an agreement by the parties, a confirmation action must be brought in the district in which the arbitration award was rendered or merely can be brought there), a majority of the circuits interpret section nine's venue provision as permissive. See, e.g., Smiga v. Dean Witter Reynolds, Inc., 766 F.2d 698 (2d Cir. 1985), cert. denied, 475 U.S. 1067 (1986) (permissive); In Re VMS Securities Litigation, 21 F.3d 139 (7th Cir. 1994) (permissive); but see Sunshine Beauty Supplies, Inc. v. United States District Court for the Central District of California, 872 F.2d 310, 312 (9th Cir. 1989) (mandatory). Additionally, two district courts within this circuit, excluding the court in the decision below, have had occasion to interpret section nine; both have held that it confers permissive, rather than mandatory, venue on district courts with the requisite subject matter and personal jurisdiction. U.S. for Kirchdorfer v. Aegis/Zublin Joint Venture , 869 F.Supp. 387 (E.D.Va. 1994) (holding that section nine does not limit confirmation

_____

**2** Paragraph nine of the Agreement states, more fully, "The conduct of the arbitration proceedings shall include the right to discovery in accordance with the rules and principles set forth in the Pennsylvania Rules of Civil Procedure." JA at 338.

5

of an award to the district court in the district of arbitration and confirmed a New York arbitration over whose parties the court had personal jurisdiction); <u>Amalgamated Clothing and Textile Workers Union v. Federation of Union Reps.</u>, 664 F.Supp. 995 (S.D.W.Va. 1987) (venue under section nine is permissive rather than exclusive).

Because there exists no binding precedent in this circuit, we look, first, to persuasive authority from our sister circuits. The Seventh Circuit undertook a particularly thorough examination of the question in <u>In Re VMS Securities Litigation, supra</u>. There, the court held that the venue provision of the FAA indeed is permissive. 21 F.3d at 145. The court looked to the express language of section nine and reasoned that ". . . in other statutes which restrict venue with so-called `special venue provisions', Congress has usually employed more explicit language than that used in the FAA." <u>Id.</u> at 144. Noting that "`[o]rdinary canons of statutory construction suggest that Congress would have used stronger language . . . if the intention was to restrict the power of the federal court in Arbitration Act cases[,]'" the court then cited several statutes with mandatory venue provisions. <u>Id.</u> (quoting <u>Smiga, supra</u>, 766 F.2d at 707). First, the Miller Act, 40 U.S.C. § 270b(b), states with respect to venue, "Every suit instituted under this section shall be brought . . . in the United States District Court for any district in which the contract was to be performed and executed and not elsewhere . . . ." <u>Id.</u> at n.3. Similarly, the Clean Air Act, 42 U.S.C. § 7604(c)(1), declares, "Any action . . . may be brought only in the judicial district in which such sources are located." <u>Id</u>. Comparing the venue language of the several statutes, we join the conclusion of the Seventh Circuit that ". . . it is apparent that the FAA is not as explicit as the statutes which unequivocally restrict venue." <u>Id.</u>

Next, we look to a prior case in which, as Apex correctly notes,[3] we held that the word "may" in section nine of the FAA is permissive, rather than mandatory, with respect to the time limit for the confirmation of an arbitration award. <u>Sverdrup v. WHC Constructors, Inc.</u>, 989 F.2d 148, 156 (4th Cir. 1993). We held that in providing that at any time within one year after an arbitration award, any party thereto "may" petition court for a confirmation order, section nine was a permissive provision. <u>Id.</u> We reasoned that"[t]he word `may' in a statute

_____

**3** Appellee's Brief at 15-16.

normally confers a discretionary power, not a mandatory power, unless the legislative intent, as evidenced by the legislative history, evidences a contrary purpose." Id. at 151 (citing Dalton v. United States, 816 F.2d 971, 973 (4th Cir. 1987) (citing United Hospital Center, Inc. v. Richardson, 757 F.2d 1445, 1453 (4th Cir. 1985)). Looking behind that language to determine Congressional intent, we next found that ". . . Congress understood the plain meaning of `may' to be permissive. Section 9 of the FAA states that any party `may apply' for a confirmation order but the court `must grant' the order absent a modification or vacation under §§ 10 or 11." Id. (quoting 9 U.S.C. § 9).

Looking to section nine's venue provision, here, too, Congress could not have understood the plain meaning of "may" to be anything other than permissive. Had Congress intended to restrict venue under section nine to "the United States court in and for the district within which such award was made," it simply would have stated that the parties "must," not "may," bring a confirmation action there. Again, section nine's drafters knew well the distinction between the two verbs; they chose "must" to communicate the compulsory command elsewhere in section nine that ". . . the court must grant such an order unless the award is vacated, modified, or corrected . . . ." 9 U.S.C. § 9.

For all of these reasons, we hold that section nine of the FAA confers permissive, rather than mandatory, venue upon district courts in and for the district in which an arbitration award was made. In the case below, because the Maryland district court possessed subject matter and personal jurisdiction over the parties' confirmation petition, venue was lodged properly in that court.

B. Valuation of Inventory Over One Year Old

U.S. maintains here, as its accountants did at the arbitration hearing, that the arbitrator included inventory over one year old in its valuation of Apex's entire inventory. As U.S. points out, such an action, if true, would be in contravention of the clear terms of sale laid out in the "Option to Purchase" section of the Agreement. See JA at 334. U.S. claims that, because the arbitrator went outside of the management agreement in making his calculations, the arbitration award should have been vacated or modified below.

7

Apex does not dispute the allegation that the arbitrator included dated inventory in his valuation. Instead, Apex argues that U.S. should not be able to challenge the arbitrator's calculation methodology this late in the proceedings. Citing United Food and Commercial Workers v. Marval Poultry, 876 F.2d 346, 351 (4th Cir. 1989), Apex states that "where the challenge to an award does not go to the arbitrator's fundamental power but instead involves the merit of an arbitration award, the challenge must be considered presumptively unjustified." Appellee's Brief at 21.

Apex is correct in an important respect. Review of an arbitrator's award is severely circumscribed. Indeed, the scope of review of an arbitrator's valuation decision is among the narrowest known at law[4] because to allow full scrutiny of such awards would frustrate the purpose of having arbitration at all--the quick resolution of disputes and the avoidance of the expense and delay associated with litigation. Jih v. Long & Foster Real Estate, Inc., 800 F. Supp. 312, 317 (D.Md. 1992). Federal courts may vacate an arbitration award only upon a showing of one of the grounds listed in the Federal Arbitration Act, or if the arbitrator acted in manifest disregard of law. In re A.H. Robins Co., Inc., 197 B.R. 513, 516 (E.D.Va. 1994). [5]

The FAA provides, in pertinent part, that:

_____

[4] Courts of Appeals are precluded from engaging in de novo review of a confirmation of an arbitration award. Parsons & Whittemore v. Yeargin Const. Co., Inc., 744 F.2d 1482, 1484 (11th Cir. 1984).

[5] This narrow standard of review is necessary to preserve the benefits of arbitration, to wit, reduced delay and expense, and to prevent arbitration from becoming a preliminary step to judicial resolution. Eljer Mfg., Inc. v. Kowin Development Corp., 14 F.3d 1250 (7th Cir.), cert. denied, ___ U.S. ___, 114 S.Ct. 2675 (1994). Moreover, Courts of Appeals do not review the reasoning of arbitrators in determining whether their work draws its essence from the contract, but look only to the result reached; the single question is whether the award, however arrived at, is rationally inferable from the contract. Anderman/Smith Operating Co. v. Tennessee Gas Pipeline Co., 918 F.2d 1215 (5th Cir. 1990), cert. denied, 501 U.S. 1206 (1991). An arbitration award will not be set aside unless it is irrational or evidences manifest disregard for law. Upshur Coal Corp. v. United Mine Workers of America, Dist. 31, 933 F.2d 225, 229 (4th Cir. 1991).

8

(a) In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration--

. . .

(4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

. . .

9 U.S.C. § 10(a). Section 11 of the FAA similarly allows modification of an arbitrator's award only in limited instances including, as U.S. argues here, "[w]here there was an evident miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award." 9 U.S.C.§ 11(a).

The appellant argues that both such errors werw present maintaining that the arbitrator (1) exceeded his powers by valuing inventory that is expressly to be valueless in the Agreement and, thereby, (2) performed an evident miscalculation of the inventory figures as part of the total award. This argument, however, is not supported by courts in this or other circuits which have held that "as a matter of law" neither misinterpretation of a contract nor an error of law "constitutes a ground on which an award can be vacated." Farkas v. Receivable Financing Corp., 806 F. Supp. 84, 87 (E.D.Va. 1992) (citations omitted). Indeed, "a conclusion reached by the [arbitrator], even if questionable . . . does not constitute exceeding [his] power." Kirchdorfer, supra, 869 F. Supp. at 392.

U.S., not unexpectedly, counters that here more than a mere "misinterpretation" of the contract has transpired because the arbitrator's valuation decision irrationally disregarded an unambiguous provision of the Agreement. Even if we were to accept the premise of U.S.'s assertion, however, no precedent supports vacation on this ground; indeed, U.S. cites none. To the contrary, authority interpreting the

9

FAA has held that merely because an arbitrator's decision is not based on an agreement's express terms does not mean that it is not properly derived from the agreement; neither misapplication of principles of contractual interpretation nor erroneous interpretation of the agreement in question constitutes grounds for vacating an award. See, e.g., Harry Hoffman Printing, Inc. v. Graphic Communications Intern. Union, Local 261, 950 F.2d 95 (2d Cir. 1991). Far from acting "irrationally," the entire record indicates that the arbitrator relied on, among other evidence, the expert testimony of a certified public accountant on the question of inventory valuation. JA at 606, 805, 889.

Again, U.S. also urges that the arbitrator's award be modified pursuant to 9 U.S.C. § 11(a) because the award owed to an evident miscalculation of the inventory figures. As to this proposed remedy, courts have held generally that even a mistake of fact or misinterpretation of law by an arbitrator provides insufficient grounds for the modification of an award. See Amicizia Societa Navegazione v. Chilean Nitrate and Iodine Sales Corp., 274 F.2d 805 (2d Cir. 1960). As the district court stated on this point:

> [C]ourts have construed literally the language of Section 11, relating to miscalculation of figures or misdescription of property as a ground for modification of an arbitration award. . . . Where no mathematical error appears on the face of the award . . . an arbitration award will not be altered.

Apex Plumbing Supply, Inc., et al. v. U.S. Supply Co., Civil No. AW-96-3362, Memorandum Opinion at 5 (D.Md. February 24, 1997) (citing Hough v. Merrill Lynch, Pierce, Fenner & Smith, 757 F.Supp. 283, 288 (S.D.N.Y. 1991)). JA at 905. Here, because even if the claimed miscalculation of the inventory's value constituted a "material mistake," the miscalculation was not "evident" because it did not appear on the face of the arbitration award. Hough, 757 F.Supp. at 288. Thus, as the district court correctly determined, U.S. did not meet its burden under section eleven in order to modify the award.

Accordingly, we hold that because the appellant failed to qualify under any ground listed in either section ten or eleven of the FAA

10

allowing the vacation or modification of an arbitration award, the district court properly confirmed that award.

III.

For the foregoing reasons, the district court's confirmation of the arbitrator's award in this case hereby is

AFFIRMED.

11