**CHOICE HOTELS INTERNATIONAL, INC.**

v.

**Francisco FELIZARDO, et al.**

**No. CIV.A.DKC 2002–3613.**

United States District Court,
D. Maryland.

Aug. 12, 2003.

James G. Healy, Choice Hotels International Inc., Silver Spring, MD, for Plaintiff.

Daniel S. Willard, Law Offices of Daniel S. Willard PC, Rockville, MD, for Defendant.

## MEMORANDUM OPINION

CHASANOW, District Judge.

Presently pending and ready for resolution is the motion of Choice Hotels Inter-

national, Inc. (Choice) to vacate arbitration award. The issues have been fully briefed and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion to vacate will be denied.

## I. Background

This case arises out of a franchise agreement between Choice as franchisor and Francisco Felizardo and Erlinda Felizardo (Defendants) as franchisees. Defendants operated a hotel in Santa Clara, California under the Econo Lodge marks owned by Choice in exchange for the payment of certain fees and royalties pursuant to the franchise agreement with Choice. The parties' agreement was effective on July 15, 1997 and Choice terminated the agreement by letter dated April 4, 2000, following the failure of Defendants to comply with their obligations under the contract, including failure to pay timely royalty fees and other charges due under the franchise agreement, which prompted Choice to send Defendants several formal notices of default.

Following termination of the franchise agreement, Choice filed an arbitration proceeding with the American Arbitration Association (AAA) against Defendants in which it sought to recover franchise fees that had accrued during the time the contract was in effect, along with damages due to the premature termination of the contract. Defendants filed a counterclaim seeking, *inter alia,* rescission of the franchise agreement and the return of franchise fees paid on the ground that Choice had failed to provide a required disclosure statement and secure a receipt therefor. The arbitration hearing took place on July 9, 2002. In an award dated September 4, 2002, the arbitrator entered an award for

Defendants in the amount of $33,970.66 and $2,000.00 for costs. On November 5, 2002, Choice filed the instant action in this court seeking to vacate the arbitration award and remand the case to the AAA for scheduling of a new hearing before a different arbitrator.

## II. Jurisdiction

There are three possible bases for a federal district court's exercise of jurisdiction over a given case: (1) jurisdiction under a specific statutory grant; (2) federal question jurisdiction pursuant to 28 U.S.C. § 1331; or (3) diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). *See Baltin v. Alaron Trading Corp.,* 128 F.3d 1466, 1469 (11th Cir.1997). Federal courts and state courts have concurrent jurisdiction to enforce the FAA, *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), however, the FAA does not create an independent basis for federal question jurisdiction. *Id.,* at 26 n. 32, 103 S.Ct. 927. Courts have held that § 10 of the FAA, 9 U.S.C. § 10, is not a statutory grant of federal subject matter jurisdiction. *See, e.g., Baltin,* 128 F.3d at 1470. Furthermore, the instant matter involves a breach of contract to which Maryland law applies.[1] Choice's motion to vacate is premised on the alleged misconduct of the arbitrator and does not depend on the "resolution of a substantial question of federal law." *See Franchise Tax Bd. of State of California v. Construction Laborers Vacation Trust for Southern California,* 463 U.S. 1, 28, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983); *Baltin,* 128 F.3d at 1472. Federal question jurisdiction is therefore also not present.

---

**1.** According to the arbitration clause of the franchise agreement, Maryland state law applies to the substantive matters in dispute between the parties.

■ At issue is whether diversity jurisdiction exists in this case. Diversity jurisdiction exists pursuant to 28 U.S.C. § 1332(a) in all civil actions where the matter in controversy exceeds $75,000 and is between citizens of different states. *Id.* Defendants do not contest that they and Choice are citizens of different states; instead, Defendants argue that the amount in controversy between the parties does not exceed $75,000. The state court claim that Choice initially filed against Defendants in November 2000 in the Circuit Court for Montgomery County sought $6,313.21 in unpaid franchise fees and $39,600 in liquidated damages. Paper 4, Ex. 1, at 4. In the demand for arbitration that Choice made against Defendants in April 2001, Choice sought relief in the amount of $46,266.41. *Id.*, Ex. 5, at 1. In the closing brief Choice submitted in the arbitration, it requested that it be awarded the sum of $56,711.23.[2] *Id.*, Ex. 11, at 14. Defendants note that at no time have Choice's demands against them exceeded the $75,000 amount required for diversity jurisdiction.

Courts are not uniform in their approach to determining the amount in controversy in an action challenging an arbitration award. Some look solely to the amount of the award. *See Goodman v. CIBC Oppenheimer & Co.*, 131 F.Supp.2d 1180, 1184 (C.D.Cal.2001) (holding that "[t]he amount in controversy is equal to the arbitration award regardless of the amount sought in the underlying arbitration."); *see also Mannesmann Dematic Corp. v. Phillips, Getschow Co.*, No. Civ. A. 3:00–CV–2324–G, 2001 WL 282796 at * 2 (N.D.Tex. March 16, 2001) (adopting the "sound approach" taken by the Sixth and Eleventh Circuits to depend solely on the amount of the award in an action to vacate). Other

courts have noted that, where a remand is sought in addition to the vacating of the award, it might be proper to look at the underlying amount sought. *See Sirotzky v. New York Stock Exchange*, No. 02 C 0970, 2002 WL 1052029 at *3 (N.D.Ill. May 20, 2002) (noting that under *Hough v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 757 F.Supp. 283 (S.D.N.Y.1991), the amount in controversy may consist of the amount sought in the underlying arbitration where a plaintiff petitions for a remand for rehearing in addition to vacation of an earlier arbitration award); *see also Baltin*, 128 F.3d at n. 16 (observing that had the plaintiffs requested an award modification that would provide them with money in addition to reducing or eliminating the arbitration award against them, the amount in controversy might include more than just the amount of the arbitration award).

■ It is the burden of the party asserting jurisdiction to demonstrate that jurisdiction exists. *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir.1999). While the amount of the arbitration award is only $33,970.66 plus $2000 in costs, Choice did request a remand to the AAA for a rehearing of the matter when it filed its motion to vacate. Paper 1, at 16. From Choice's perspective, at the time it filed its motion, it not only sought to avoid the $35,970.66 award to Defendants but also sought to obtain the original arbitration claim against Defendants. Paper 6, at 1. Thus, from the perspective of the party filing suit, the amount in controversy was a swing from minus $36,000 to a plus of about $60,000, a total of approximately $96,000. The amounts sought by each party are mutually exclusive and would not be set offs against each other. Although it is not entirely free from doubt, the court

---

**2.** Choice notes in its Reply that the arbitration award also included the costs of arbitration, approximately $ 8,880.00, thus bringing the amount to $ 65,238.13. Paper 6, at 1.

concludes that, looking at both the amount of the award sought to be avoided and the additional amount sought to be obtained by the moving party on remand, the amount in controversy in this case exceeds $75,000 and that diversity jurisdiction exists.

### III. Standard of Review

 Review of an arbitrator's award is severely circumscribed. Indeed, the scope of review of an arbitrator's valuation decision is among the narrowest known at law because to allow full scrutiny of such awards would frustrate the purpose of having arbitration at all-the quick resolution of disputes and the avoidance of the expense and delay associated with litigation.

*Apex Plumbing Supply v. U.S. Supply Co., Inc.*, 142 F.3d 188, 193 (4th Cir.1998). If there is a valid contract between the parties providing for arbitration, and if the dispute resolved in the arbitration was within the scope of the arbitration clause, then substantive review is limited to those grounds set out in § 10 of the Federal Arbitration Act (FAA), 9 U.S.C. § 10(a). That section allows vacating of an award (1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or misconduct on the part of the arbitrator; or (3) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made. 9 U.S.C. § 10(a). In addition, a court may overturn a legal interpretation of an arbitration panel if "it is in manifest disregard for the law." *See, e.g. Apex Plumbing*, 142 F.3d at 193 ("Federal courts may vacate an arbitration award only upon a showing of one of the grounds listed in the [FAA], or if the arbitrator acted in manifest disregard of the law"); *Upshur Coals Corp. v. United Mine Workers of America*, 933

F.2d 225, 229 (4th Cir.1991). Mere misinterpretation of a contract or an error of law does not suffice to overturn an award. *See Upshur*, 933 F.2d at 229. The burden is on the party challenging an award to prove the existence of one of the grounds for vacating the award.

### IV. Analysis

Choice argues that the arbitration award must be vacated because the arbitrator exceeded the authority granted to him by the parties or, in the alternative, because the award was made in manifest disregard of the law. Defendants challenge the motion to vacate, asserting that Choice has failed to meet the very high standard for vacating an arbitration award.

### A. Authority Granted to Arbitrator by the Parties

 Choice argues that the arbitration award must be vacated pursuant to § 10 of the FAA because the arbitrator exceeded the authority granted to him by the parties by ignoring the plain language of the contract: (1) stipulating receipt by Defendants of the uniform franchise offering circular (UFOC); (2) requiring that Maryland law be applied to the resolution of disputes between the parties; and (3) requiring that any claims be filed, if at all, within three years of the date they accrued.

According to the Supreme Court:

> [t]he arbitrator may not ignore the plain language of the contract; but the parties having authorized the arbitrator to give meaning to the language of the agreement, a court should not reject an award on the ground that the arbitrator misread the contract.

*United Paperworkers Int'l Union, AFL–CIO v. Misco, Inc.*, 484 U.S. 29, 38, 108

S.Ct. 364, 98 L.Ed.2d 286 (1987). As the Fourth Circuit has stated:

> [a]lthough we may disagree with an arbitrator's interpretation of a contract, we must uphold it so long as it draws its essence from the agreement. As long as the arbitrator is even arguably construing or applying the contract, a court may not vacate the arbitrator's judgment. Consequently, an award may be overturned only if the arbitrator must have based his award on his own personal notions of right and wrong, for only then does the award fail to draw its essence from the [agreement].

*Upshur*, 933 F.2d at 229.

In the arbitration underlying the present action, the arbitrator found that Choice "failed to demonstrate the existence of a valid contract, including compliance with FTC rules regarding franchise agreement disclosures". Paper 4, Ex. 9, at 3. Choice claims that the arbitrator ignored the plain language of the contract stipulating receipt by Defendants of the UFOC. In fact, after weighing the evidence presented by the parties as to whether the UFOC disclosure statement was in fact provided to Defendants, the arbitrator found that the elements of a binding contract required by Maryland law were not present and that there was no real understanding or agreement between the parties. Choice also argues that the arbitrator ignored the plain language of the contract requiring him to apply Maryland law to the resolution of disputes between the parties. Reviewing the arbitrator's award, it is clear that the arbitrator's conclusion that no contract was formed was based upon an application of Maryland law. While Choice may disagree with the arbitrator's conclusions, the arbitrator did not exceed his authority by finding no contract existed and did not ignore the plain language of the contract requiring the application of Maryland law.

Choice also argues that the arbitrator exceeded his authority by not disqualifying Defendants' counterclaim for being brought outside the three year limit provided at paragraph 20(k) of the franchise agreement. Choice points out that Defendants' counterclaim was not properly "filed" according to the Commercial Arbitration Rules of the AAA and that Choice had made its objections on these grounds to the arbitrator in its closing brief in connection with the hearing. *See* Paper 4, Ex. 11, at 13. Although the arbitrator does not address Choice's objection in the text of his award, the court cannot conclude that the arbitrator ignored Choice's arguments regarding the requirements of paragraph 20(k) of the franchise agreement. The arbitrator may have decided, rightly or wrongly, that Choice had waived its objection or that paragraph 20(k) was for some reason not valid or binding upon the parties. Choice has not met its burden of proving to this court that the arbitrator "based his award on his own personal notions of right and wrong." *See Upshur*, 933 F.2d at 229. As the Fourth Circuit has stated, "a conclusion reached by the [arbitrator], even if questionable ... does not constitute exceeding [his] power." *Apex Plumbing*, 142 F.3d at 194 (internal citations omitted). Choice's motion to vacate based on the claim that the arbitrator exceeded his authority must therefore be denied.

### B. Manifest Disregard of the Law

According to the Fourth Circuit:

> [n]ot only is an arbitrator's fact finding and contract interpretation accorded great deference, but its interpretation of the law is accorded deference as well. A legal interpretation of an arbitrator may only be overturned where it is in mani-

fest disregard of the law. An arbitration award is enforceable even if the award resulted from a misinterpretation of law, faulty legal reasoning or erroneous legal conclusion, and may only be reversed when arbitrators understand and correctly state the law, but proceed to disregard the same.

*Upshur*, 933 F.2d at 229 (internal citations omitted).

 Choice argues that the arbitrator made his award in manifest disregard of the laws of Maryland. First, Choice argues that the arbitrator acted in manifest disregard of the law by making a finding contrary to the contractual provision that specified that Defendants had received the UFOC. According to Choice, Maryland law required the arbitrator to recognize and enforce that provision. Second, Choice argues that the doctrine of equitable estoppel, recognized by Maryland, required a finding in favor of Choice; the refusal of the arbitrator to recognize that this doctrine applied to the facts of the dispute was therefore in manifest disregard of the law. Third, Choice argues that because both the language of the contract and the Maryland statute of limitations barred any claim not brought within three years, the arbitrator acted in manifest disregard of the law by allowing Defendants' counterclaim to go forward. Fourth, Choice argues that the Maryland Franchise Registration and Disclosure Law regulating the offer and sale of franchises under certain circumstances does not apply to the transaction between the parties and therefore, the arbitrator's application of this law to the dispute between the parties was in manifest disregard of the law. Fifth, Choice argues that Maryland law on contract rescission required Defendants to make an effective attempt to rescind the franchise agreement. By holding that Defendants were entitled to rescission even though they had not made such an attempt, the arbitrator acted in manifest disregard of the law.

The only record of the arbitrator's decision and reasoning is contained in the text of the arbitration award. Paper 4, Ex. 9. With respect to Choice's arguments regarding the arbitrator's disregard for Maryland's contract and franchise law, a review of the arbitration award reveals that Choice's objections are essentially to the arbitrator's application of these laws. Even if the arbitrator misinterpreted these laws, engaged in faulty legal reasoning, or came to erroneous legal conclusions, however, this court would still not have a basis for vacating the award. *See Upshur*, 933 F.2d at 229.

The arbitrator does not discuss the doctrine of equitable estoppel, Maryland's statute of limitations, or Maryland law on rescission in the text of the award. It is therefore impossible for the court to conclude that the arbitrator understood and correctly stated the law, but disregarded it anyway. As the Sixth Circuit observed, "[a]rbitrators are not required to explain their decisions. If they choose not to do so, it is all but impossible to determine whether they acted with manifest disregard for the law." *Dawahare v. Spencer*, 210 F.3d 666, 669 (6th Cir.2000) (citing *Merrill Lynch, Pierce, Fenner & Smith v. Jaros*, 70 F.3d 418, 421 (6th Cir.1995)).

No transcript of the hearing that took place on July 8, 2002 has been submitted to the court, however, a review of the briefs that the parties submitted to the AAA arbitrator reveals that Choice did make arguments to the arbitrator based on the doctrine of equitable estoppel, Maryland law on rescission, and the limitations period of three years provided for in the contract at paragraph 20(k) of the franchise agreement. Paper 4, Ex. 11, at 11–13. While this helps to demonstrate that

the arbitrator was aware of the law, Choice must still demonstrate that the arbitrator chose not to apply that law. *See Dawahare*, 210 F.3d at 669 ("to find manifest disregard a court must find two things: the relevant law must be clearly defined and the arbitrator must have consciously chosen not to apply it."). In *Montes v. Shearson Lehman Brothers, Inc.*, 128 F.3d 1456 (11th Cir.1997), the Eleventh Circuit found that an arbitration panel acted in manifest disregard of the law where the defendant's attorney urged the panel to disregard the applicable law and there was no evidence that the arbitrators had rejected the urging when it ruled in favor of the plaintiff. *See id.* at 1458–59, 1464. In the present case, Choice's estoppel, rescission, and limitations arguments were made in its closing brief submitted to the arbitrator after Defendants submitted their brief, and thus Defendants had no opportunity to respond. There is no evidence that Defendants urged the arbitrator to disregard the law that Choice identified and discussed. *See Marshall v. Green Giant Co.*, 942 F.2d 539, 550 (8th Cir.1991) ("[T]here must be some showing in the record, other than the result obtained, that the arbitrators knew the law and expressly disregarded it."). Choice's motion to vacate the award on the basis of the arbitrator's manifest disregard of the law must therefore be denied.

## V. Conclusion

For the foregoing reasons, the motion of Choice Hotels to vacate the arbitrator's award will be denied. A separate order will follow.

### ORDER

For the reasons stated in the foregoing Memorandum Opinion, it is this 12th day of August, 2003, by the United States District Court for the District of Maryland, ORDERED that:

1. The motion of Choice Hotels International, Inc. to vacate the award of the arbitrator BE, and the same hereby IS, DENIED; and

2. The clerk will transmit copies of the Memorandum Opinion and this Order to counsel for the parties and CLOSE this case.