[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-10118

_____

D.C. Docket No. 9:14-cv-81622-RLR


EARTH SCIENCE TECH, INC.,

                                                    Plaintiff - Appellant,

versus

IMPACT UA, INC.,
CROMOGEN BIOTECHNOLOGY CORPORATION,
SLAVIK NENAYDOKH,
MICHAEL BRUBECK,

                                                    Defendants - Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(April 14, 2020)

Before ROSENBAUM, JILL PRYOR, and BRANCH, Circuit Judges.

PER CURIAM:

This appeal concerns a dispute between Appellant Earth Science Tech, Inc. ("Earth Science"), a Florida-based company that distributes cannabidoil ("CBD")-rich hemp-oil products throughout the United States, and Appellee Cromogen Biotechnology Corporation ("Cromogen"),[1] an El Salvador-based company that supplies hemp-based biotechnology.

On June 5, 2014, Cromogen entered into a Distribution Agreement with Earth Science, allowing Earth Science to exclusively distribute Cromogen's CBD oil. The parties' relationship, however, quickly soured. As we recount below, just four months later, Cromogen served Earth Science with a Demand for Arbitration and asserted breach of contract, conversion, and tortious interference. Earth Science responded with its own state-court breach-of-contract claim. After removal to federal court, the district court stayed the action pending the completion of arbitration. Over three years later, an arbitration panel (the "Tribunal") ruled in Cromogen's favor on all issues relevant here.

---

[1] In the original action Earth Science, Inc., filed in state court, defendants included Appellee Cromogen Biotechnology Corporation; Slavik Nenaydokh, an officer, agent, and employee of Cromogen; Michael Brubeck, an officer, agent, and employee of Cromogen; and Impact UA, Inc., a company that invoiced Earth Science for some of the CBD oil Cromogen sent it. Before Cromogen, Nenaydkh, and Brubeck were served, Impact removed the case to federal court. The district court stayed the case to allow the parties to conduct arbitration proceedings. Once arbitration proceedings concluded, Cromogen took the lead for the defendants, explaining that, "[t]hough [Earth Science] sued multiple defendants, the true dispute was always between [Earth Science] and Defendant Cromogen." Because no defendants other than Cromogen made any filings following the district court's lifting of the stay in this case, this opinion discusses only Cromogen.

It is that arbitration decision that concerns us here.  Specifically, once the Tribunal entered its award (the "Final Award"), Cromogen moved the district court to confirm the award, and Earth Science moved to vacate or modify the award, arguing that the tort claims were not arbitrable, and even if they were, the damages awarded on those counts were excessive.  The district court rejected Earth Science's arguments and affirmed the Tribunal's Final Award.  After careful review of the record and the briefs, we also affirm.

## I.

As noted, Cromogen entered into a Distribution Agreement with Earth Science in mid-2014.  That Distribution Agreement appointed Earth Science as an exclusive distributor to formulate, market, and sell Cromogen's CBD oil to other companies.  In general, the Distribution Agreement obliged Cromogen to provide conforming quantities of CBD oil and Earth Science to purchase CBD oil from Cromogen and resell it within the United States, with the two companies sharing revenue from Earth Science's sales.  As particularly relevant here, the Distribution Agreement also included an arbitration clause:

> **Governing Law and Venue.**  This Agreement and performance by the parties hereunder shall be construed in accordance with the laws of the State of New York, U.S.A., without regard to provisions on the conflicts of laws.  Both parties submit to exclusive International Arbitration through JAMS International using UNCITRAL rules in New York, New York.  U.N.

3

Convention on International Sale of Goods shall not apply
to this Agreement.

Earth Science received its first two shipments of CBD oil from Cromogen in July and August 2014. Though the August shipment also contained four samples of CBD oil, Cromogen was obligated to deliver those samples to another customer, CBD Oil Depot. Cromogen needed the samples to demonstrate that performance indicators were met as part of a deal with CBD Oil Depot. Earth Science was advised of this on numerous occasions and agreed to forward the samples, but it never did.

On August 21, 2014, Earth Science canceled the Distribution Agreement, accusing Cromogen of breaching the Distribution Agreement because the product shipped in the first two deliveries was not pure CBD oil. Cromogen disagreed and asserted that it was Earth Science that had breached the Distribution Agreement by canceling it and by failing to pay the second half of the amount owed for the two shipments.

That October, Cromogen served its arbitration demand. About one month later, Earth Science responded with its state-court complaint. On December 31, 2014, Earth Science's lawsuit was removed to the United States District Court for the Southern District of Florida, pursuant to 9 U.S.C. § 302. The district court then stayed the proceedings pending the completion of arbitration.

In June 2015, Cromogen filed a Statement of Claim, which included causes of action against Earth Science for breach of contract, conversion of the samples,

4

and tortious interference with contractual relations.  As relevant here, Earth Science countered that Cromogen's tort claims fell outside the scope of the Distribution Agreement's arbitration provision.

The Tribunal rejected Earth Science's position and found in favor of Cromogen on all three of its claims.

First, the Tribunal dismissed Earth Science's contention that the conversion and tortious-interference claims were beyond the scope of the arbitration provision. In its reasoning, the Tribunal noted the "strong policy favoring arbitration" and the fact that "arbitration clauses are construed as broadly as possible, resolving any doubts concerning the scope of the arbitrable issues in favor of arbitration."  The Tribunal rejected Earth Science's "narrow" interpretation because it "never would have received these samples were it not for its [Distribution] Agreement with Cromogen."  And it explained that the text of the arbitration clause itself supported the conclusion that the tort claims were included among the claims to be arbitrated:

> A plain reading of the clause, which not only refers to the [Distribution] Agreement but  the "performance  of the parties hereunder,"  supports a broad interpretation of the clause.  In addition, the second part of the clause requires both parties to submit to "exclusive International Arbitration through JAMS International using UNCITRAL Rules in New York, NY" thus stating that all disputes between the parties would exclusively be resolved in arbitration. The Tribunal construes this language to mean that the parties were aware and agreed that this would be an international arbitration . . . and

5

subject to a policy favoring a broad reading with *all* disputes to be submitted to arbitration.

Turning to the merits of the claims, the Tribunal concluded that the CBD oil that Cromogen provided to Earth Science complied with the Distribution Agreement and that Earth Science breached the agreement by failing to make payment in full. As to the tort claims, the Tribunal concluded that Earth Science converted the samples and that Cromogen lost its contract with CBD Oil Depot because Earth Science failed to deliver the samples as it had promised to do. So the Tribunal entered a monetary award in favor of Cromogen on all three claims.

The Tribunal arrived at its damages calculation based on the following submissions, or lack thereof. According to the Tribunal, Cromogen submitted (1) the executed contract with CBD Oil Depot; (2) the specified contract price, quantity, and duration; (3) an expert report on damages; and (4) a substantiation of costs from third parties. The Tribunal contrasted that evidence with the fact that Earth Science submitted (1) no expert report as to damages, (2) no witness testimony regarding damages, and (3) no market information. The Final Award totaled $3,994,522.55. The tort claims accounted for $3,763,200 of that amount.

Earth Science challenged the Tribunal's Final Award by filing a UNCITRAL Rule 38 Application to Correct the Award, claiming that the Tribunal had mistakenly calculated Cromogen's lost profits by relying on an incorrect cost of goods sold. That Application was denied on August 2, 2018.

6

The parties then filed their motions in the district court. Cromogen moved to confirm the Tribunal's award. Earth Science cross-moved to partially vacate the award. The district court found Earth Science's arguments unconvincing, denied its motion, and granted Cromogen's motion to confirm the award.

On appeal, Earth Science continues to press its argument that Cromogen's tort claims were beyond the scope of the arbitration clause and that the district court should have modified the Final Award to correct an alleged miscalculation of damages. Earth Science also argues that the district court could not enforce the Final Award because the contract involved a purportedly illegal substance—CBD oil. For the reasons below, we affirm.[2]

## II.

We review *de novo* the district court's denial of a motion to vacate an arbitration award, but we review the district court's factual findings for clear error. *White Springs Agric. Chems., Inc. v. Glawson Invs. Corp.*, 660 F.3d 1277, 1280 (11th Cir. 2011). The *de novo* standard does not mean we may substitute our own judgment for that of the arbiter's. Instead, a "federal court's review of an arbitration award is highly deferential and extremely limited." *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union AFL-CIO-CLC v. Wise Alloys, LLC*, 807 F.3d 1258, 1271 (11th Cir. 2015). And, "[a]ny doubts

---

[2] We have jurisdiction under 28 U.S.C. § 1291.

7

concerning the scope of arbitrable issues—that is, doubts over whether an issue falls within the ambit of what the parties agreed to arbitrate—should be resolved in favor of arbitration." *JPay, Inc. v. Kobel*, 904 F.3d 923, 929 (11th Cir. 2018) (internal quotation marks omitted). Moreover, if the parties assign arbitrability to the arbiter, "a court must defer to" that arbiter's decision on that issue. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995).

Finally, we may affirm the district court's rulings on any ground supported by the record. *Big Top Koolers, Inc. v. Circus-Man Snacks, Inc.*, 528 F.3d 839, 844-45 (11th Cir. 2008).

## III.

We begin with Earth Science's contention that the tort claims were not subject to arbitration. While Earth Science musters numerous arguments on that front, we may resolve the appeal by focusing on two issues. First, Earth Science contends that it's entitled to relief under § 10(a)(4) of the Federal Arbitration Act (the "FAA"). As we explain below, though, that argument fails to get off the ground because the arbitration is governed by the Panama Convention,[3] which does not recognize § 10(a)(4) as a basis for refusing to enforce an arbitration award. Second, assuming we could entertain Earth Science's § 10(a)(4) challenge, we would conclude that the

---

[3] Formally, the Panama Convention is the Inter-American Convention on International Commercial Arbitration of January 30, 1975, O.A.S.T.S. No. 42, 1438 U.N.T.S. 245.

Distribution Agreement's arbitration provision assigns issues of arbitrability to the arbitration panel.

Section 202 of the FAA (9 U.S.C. § 202) provides that all arbitration awards arising out of commercial relationships that are not purely domestic "fall under the Convention." *Industrial Risk Insurers v. M.A.N. Gutehoffnungshutte GmbH*, 141 F.3d 1434, 1440-41 (11th Cir. 1998).[4]  Chapter 3 of the FAA, 9 U.S.C. §§ 301-307, implements the Panama Convention and § 302 incorporates § 202 by reference. Cromogen and Earth Science are citizens of El Salvador and the United States, respectively.  And both of those countries are parties to the Panama Convention.[5] So the Panama Convention governs the arbitration at issue here.

Also, and critical for our purposes, § 302 incorporates § 207 of the FAA. Section 207 requires federal courts to "confirm [an arbitration] award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention."  9 U.S.C. § 207.  Article 5 of the Panama

---

[4] Though *Industrial Risk* concerned the Panama Convention's predecessor, the United Nations Convention on the Recognition and Enforcement of Arbitral Awards of June 10, 1958, 21.3 U.S.T. 2517 (known as the "New York Convention"), "[t]here is no substantive difference between the two" Conventions. *Corporacion Mexicana De Mantenimiento Integral, S. De R.L. De C.V. v. Pemex-Exploracion Y Produccion*, 832 F.3d 92, 105 (2d Cir. 2016) (citation and quotation marks omitted).  And authority concerning one convention is equally applicable to the other. *Id.* at 105 n.9.

[5] *See* Organization of American States, *Signatories and Ratification for the Inter-American Convention on International Commercial Arbitration (B-35)*, http://www.oas.org/juridico/english /sigs/b-35.html.

Convention sets forth seven exceptions that a party may invoke to object to the enforcement of an arbitration award.[6]

In *Industrial Risk*, we held that the defenses enumerated by the New York Convention provide the exclusive grounds for vacating an award subject to the Convention. *See* 141 F.3d at 1446. That holding applies to arbitration awards governed by the Panama Convention. *See supra* n.4; s*ee also Pemex-Exploracion*, 832 F.3d at 106 (2d Cir. 2016) ("[A] district court must enforce an arbitral award rendered abroad unless a litigant satisfies one of the seven enumerated defenses[.]"). So for Earth Science to successfully challenge the Final Award in this case, it must, at the very least, invoke one of the Panama Convention's seven exceptions. *Inversiones y Procesadora Tropical INPROTSA, S.A. v. Del Monte Int'l GmbH*, 921 F.3d 1291, 1301-1302 (11th Cir.), *cert. denied,* 140 S. Ct. 124 (2019) (concluding that *Industrial Risk* remains binding precedent, so Article V provides the exclusive grounds for disturbing an international arbitration award). It does not. Instead, Earth Science invokes only § 10(a)(4), a ground for vacating domestic arbitration awards that is not applicable here. *See Suazo v. NCL (Bahamas)*, Ltd., 822 F.3d 543, 547 (11th Cir. 2016) ("Chapter 1 of the FAA governs domestic arbitration . . . the broad

---

[6] *See* Organization of American States, *Inter-American Convention on International Commercial Arbitration (B-35)*, http://www.oas.org/en/sla/dil/inter_american_treaties_B-35_international_commercial_arbitration.asp.

defenses applicable in the context of domestic arbitration are not generally available in cases governed by the New York Convention[.]").

For that reason alone, we affirm the district court on this issue.

But even if we were not required to affirm on that basis and could reach Earth Science's § 10(a)(4) challenge, we would reject it for two reasons tied to the text of the Distribution Agreement's arbitration provision. Although courts, not arbitrators, ordinarily decide whether a dispute is arbitrable, the parties can choose to have arbitrators resolve the question of arbitrability, so long as that intention is evidenced by clear and unmistakable evidence. *See JPay*, 904 F.3d at 930. As we explain next, that's exactly what the parties did here. And when the parties agree to allow the arbitrators to decide arbitrability, "a court must defer to an arbitrator's arbitrability decision[.]" *First Options of Chi.*, 514 U.S. at 943.

Here, the parties agreed to submit the issue of arbitrability to the arbitrators. The arbitration clause states, "Both parties submit to exclusive International Arbitration through JAMS International using UNCITRAL rules in New York, New York." Importantly, the parties agreed to proceed under the UNCITRAL rules.[7] Article 23 of the UNCITRAL rules provides that "[t]he arbitral tribunal shall have the power to rule on its own jurisdiction, including any objections with respect to

---

[7] UNCITRAL stands for the United Nations Commission on International Trade Law. *See* UNCITRAL Arbitration Rules, http://www.uncitral.org/pdf/english/texts/arbitration/arb-rules-2013/UNCITRALArbitration-Rules-2013-e.pdf.

the existence or validity of the arbitration agreement." UNCITRAL Arbitration Rules, art. 23. We have previously held that a contract's incorporation of the American Arbitration Association's ("AAA") Rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability. *See Terminix Int'l Co. v. Palmer Ranch LP*, 432 F.3d 1327, 1332 (11th Cir. 2005); *JPay*, 904 F.3d at 936, 939. Because the AAA Rules contain a jurisdictional provision "almost identical" to that of the UNCITRAL Rules, *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013), we can see no basis for not applying the reasoning of *Terminix* here. Accordingly, we hold that the parties' incorporation of the UNCITRAL Rules in the Distribution Agreement constitutes clear and unmistakable evidence that the parties agreed to arbitrate the issue of arbitrability. Our sister Circuits agree. *See Schneider v. Kingdom of Thailand*, 688 F.3d 68, 73-74 (2d Cir. 2012) ("[W]hen parties incorporate UNCITRAL rules, they clearly and unmistakably intend to refer questions of arbitrability to the arbitrators in the first instance." (internal quotations omitted)); *Oracle*, 724 F.3d at 1074–75 (same); *Republic of Argentina v. BG Grp. PLC*, 665 F.3d 1363, 1371 (D.C. Cir. 2012) (same), *rev'd on other grounds,* 572 U.S. 25 (2014), and *vacated,* 555 F. App'x 2 (D.C. Cir. 2014). So, we must defer to the Tribunal's decision that Cromogen's tort claims were arbitrable.

12

**IV.**

Next, Earth Science argues that even if the tort claims were arbitrable, the amount of damages awarded by the Tribunal on those claims should be modified under § 11(a) of the FAA.  The attentive reader knows that that argument is also a non-starter.

Section 11(a) of the FAA authorizes district courts to modify arbitration awards "[w]here there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award."  9 U.S.C. § 11(a).  But that is not one of the seven exclusive bases for challenging an arbitration award resulting from arbitration governed by the Panama Convention.  So as with Earth Science's arbitrability challenge, the only authority Earth Science invokes to modify the Final Award is not applicable and give us no authority to provide the requested relief.

In any event, even if we could modify the Final Award under § 11(a), we would not be inclined to do so.  We have noted that, generally, the FAA "presumes that arbitration awards will be confirmed, and judicial review of an arbitration award is narrowly limited[.]"  *AIG Baker Sterling Heights, LLC v. Am. Multi-Cinema, Inc.*, 508 F.3d 995, 999 (11th Cir. 2007).  Section 11(a) is a narrow statutory exception to that rule.  *Id.* at 999, 1001.  The "material mistake" provision of the section embraces only mistakes made by the arbitration panel that appear in the description of the

award. *Id.* at 999. In *AIG Baker*, we found support for that conclusion in § 11(a)'s plain language and in *Apex Plumbing Supply, Inc. v. U.S. Supply Co.*, 142 F.3d 188, 194 (4th Cir. 1998).

*Apex Plumbing* also addressed the "material miscalculation" provision. 142 F.3d at 194. The Fourth Circuit explained that "[w]here no mathematical error appears on the face of the award . . . an arbitration award will not be altered." *Id.* (alteration in original). *Apex* further explained that even "a mistake of fact or misinterpretation of law by an arbitrator provides insufficient grounds for the modification of an award." *Id.* Applying those principles, the Fourth Circuit rejected the appellant's § 11(a) argument because, even if the alleged miscalculation of the value of the inventory was a "material mistake," the "miscalculation was not evident because it did not appear on the face of the arbitration award." *Id.* (quotation marks omitted). *Apex* also noted that the record indicated that the arbitrator relied on expert testimony and other evidence for inventory valuation. *Id.* at 194.

So too here. In the Final Award, the Tribunal stated that its damages award was supported by Cromogen's "extensive documentation relating to its cost of production, its profit and loss statement and expert testimony from Michael Soudry who analyzed Cromogen's books and records to determine its profit margin and opine as to the profits it lost." In determining damages, the Tribunal emphasized that Cromogen entered into evidence, "without objection or request for cross

14

examination by Earth Science," Soudry's sworn statement, opining on the damages suffered by Cromogen as a result of Earth Science's breach of contract and tortious interference. In contrast, Earth Science did not submit an expert report or witness testimony regarding damages. The Tribunal also applied the relevant law. Earth Science does not dispute any of that.

Instead, as far as we can tell, Earth Science says the Tribunal erred by relying on the wrong cost of goods sold. But that is neither a "material mistake" nor a miscalculation of figures evident on the face of the Final Award. Indeed, in support of its argument, Earth Science complains that it was hamstrung by the district court's refusal to accept Earth Science's Rule 38 Application and supporting documents— documents manifestly not part of the Tribunal's Final Award. And Earth Science's challenge provides no reason to think the Tribunal made a careless or obvious mathematical mistake in the Final Award.

We decline Earth Science's invitation to delve into the details of the Tribunal's award. At best, Earth Science challenges the Tribunal's methodology in arriving at the Final Award. At worst, it challenges the Tribunal's factual findings. Either way, § 11(a), even if it were applicable to this arbitration, does not authorize modification of arbitration awards on those bases. *See Stroh Container Co. v. Delphi Industries, Inc.,* 783 F.2d 743, 749-51 (8th Cir. 1986) (explaining relief under Section 11(a) is limited to "simple formal, descriptive, or mathematical mistake,"

15

not disagreement over factual or legal decisions); *Grain v. Trinity Health, Mercy Health Services Inc.,* 551 F.3d 374, 378–79 (6th Cir. 2008) (requiring "obvious numerical gaffe" on the face of the award; rejecting § 11(a) challenge asserting panel used wrong start and stop dates for calculating interest).  Moreover, the Tribunal rejected the same argument Earth Science puts forth here when it denied Earth Science's Rule 38 application.  And on this record, we decline to chalk up the Tribunal's Final Award as a product of a miscalculation or a mistake when the Tribunal deliberately rejected the same purported error.

For those reasons, we affirm the district court on this issue as well.

## V.

Finally, we turn to Earth Science's argument that confirming the Final Award would be inconsistent with federal law.  Specifically, Earth Science argues that in June 2014, when the parties executed the Distribution Agreement, Schedule 1 of 21 U.S.C. § 812 proscribed, with exceptions inapplicable here, all products containing any tetrahydrocannabinols ("THC"), including CBD oil.  Assuming without deciding that Earth Science has not waived this argument,[8] we are unconvinced for two reasons.

---

[8] Earth Science "note[d]" this point in a footnote in its opposition to Cromogen's motion to confirm the arbitral award, but it did not argue this point in that brief.  That is hardly sufficient to preserve the point.  *Cf. Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 682 (11th Cir. 2014).  Understandably, then, the magistrate judge issued a thorough report and recommendation that did not address this argument.  Nevertheless, Earth Science did object to the report and recommendation's lack of discussion of Earth Science's "concern" as to whether the dispute

First, it's unclear if Earth Science's CBD oil was proscribed by § 812 when the parties executed the Distribution Agreement.  It was Earth Science's burden to provide clarity on that point.  *O.R. Sec., Inc. v. Prof'l Planning Assocs., Inc.*, 857 F.2d 742, 748 (11th Cir. 1988) (The moving party has "the burden to set forth sufficient grounds to vacate the arbitration award[.]"); *Peebles v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 431 F.3d 1320, 1326 (11th Cir. 2005) (similar).  Yet at the time of the Distribution Agreement, Earth Science's own website touted that its products were derived from the "federally legal industrial hemp plant" and explained that its "High Grade CBD Rich Hemp Oil is legal everywhere in the USA" and that "[i]t does not require a prescription or permit to buy[.]"  We will not assume that Earth Science would so flagrantly conduct its operations and advertise them as legal if it believed that distribution was illegal.

Second, in any case, the 2018 Farm Bill mooted Earth Science's illegality argument.  *See* Agriculture Improvement Act of 2018, PL 115-334, December 20, 2018, 132 Stat 4490.  That Act removed hemp-derived CBD from the group of Schedule I substances unless the product contains a greater than 0.3% concentration of THC.  *See* PL 115-334 § 12619; 7 U.S.C. § 1639o(1); 21 U.S.C. § 812.  The Tribunal's Final Award points out that the related purchase order calls for CBD oil

---

concerning the sale and distribution of CBD—including the confirmation of the arbitration award—may be addressed by the court.  Arguably, that may have been enough to preserve the issue.  *See United States v. Schultz*, 565 F.3d 1353, 1360 (11th Cir. 2009).

17

with 0.03% THC or less.[9]  So even if the CBD oil at issue under the Distribution Agreement once fell within Schedule I's list of controlled substances, it no longer does.  And while the Farm Bill was enacted after the parties entered into their agreement here, it nonetheless allows states to take primary responsibility for regulation of hemp production.  Tellingly, Earth Science met Cromogen's 2018 Farm Bill-related argument with silence.

## VI.

For the reasons we have described, we affirm the district court's order denying Earth Science's motion to modify or vacate the arbitration award.  We also **CANCEL** oral argument in this case.

**AFFIRMED**.

---

[9] In fact, the purchase order calls for the hemp oil base to have "pure CBD molecule . . . with .03% (three tenths of one percent) THC or less."  While both of those amounts fall below the 2018 Farm Bill's proscribed limit, they are not equivalent.

18