## E. Fitch Bissell *vs.* Charles Morgan.

An equitable action to correct a mistake in an award may be maintained, although the submission provides that judgment in the Supreme Court may be entered upon the award, to the end that the matters in controversy shall be finally concluded.

Although the statute confers upon the court designated in the submission the power, within a certain time, to modify or correct the award, where there is an evident miscalculation of figures, or a mistake in the description of any person, thing or property referred to in the award, still the exercise of the power is not exclusively confined to that court. The subsequent provision in the statute, that nothing therein contained "shall be construed to impair, diminish or in any way affect the power and authority of the Court of Chancery, over arbitrators, awards or the parties thereto," is sufficiently comprehensive to restore the original equitable jurisdiction over this class of cases.

An equitable action will lie to correct a mistake in an award, by which, through the misapprehension or oversight of the arbitrator, a piece of land was omitted in the description of a farm which one of the parties was, by such award, directed to convey to the other.

An award directed one of the parties to convey to the other a farm called the "Morgan farm," the same to be described in the deed in the manner particularly specified in such award. The description there given excluded a small piece of land lying between that specifically described and the highway. The gate to the farm opened on this land, and the entrance to the buildings was across it. It was fenced in with the rest of the premises, formed a part of the door-yard, and a portion of the orchard was on it. It had formed a part of the farm for twenty-five years, and, together with that described in the award, had, during that time, been known as the "Morgan farm." *Held* that the award itself, considered in connection with the surrounding circumstances, rendered the mistake sufficiently obvious for the interposition of the correcting powers of the court; the case being brought within the equitable rule requiring the mistake to be apparent on the face of the award.

An instrument under hand and seal, assigning and transferring to the assignee the assignor's right of action for a deed conveying land, is legally sufficient to transfer such right, without being witnessed or acknowledged.

Such an instrument, not being, or professing to be, a conveyance of the land itself, does not fall within the provisions of the statute relating to the manner in which conveyances of land shall be made.

THIS action was brought by the plaintiff, as assignee of Mary J. Morgan, to correct a mistake in an award made by the plaintiff as arbitrator, under a written submission to him of certain differences existing between her

and Mary Loud and the defendant, and for a specific performance of it as corrected.

The arbitrator, after hearing and deliberating upon the evidence submitted to him, awarded that under a certain agreement submitted to him, a farm called " The Morgan farm, at the price of $70 per acre, was to be conveyed by Charles Morgan to the said Mary Jane Morgan." And he directed, by the award, that the defendant should execute, acknowledge and deliver to her a good and sufficient deed in fee, " conveying the said Morgan farm," "to be therein described as follows." Then followed a description which excluded a small piece of land, the premises in controversy, containing one acre and fifty-two hundredths of an acre. This is a triangular piece of land, lying between that specifically described in the award and the highway. The evidence showed that the gate to the farm opens on this land, and the entrance to the buildings is across it. It is fenced in with the rest of the premises, and forms part of the door-yard ; and part of the orchard is on it. And it was shown that it had formed part of the farm for twenty-five years, and together with that described in the award had, during that time, been known as the Morgan farm. The arbitrator testified that he supposed, when he made the award, that it included this piece of land.

After the award was made, the defendant conveyed to Mary J. Morgan the land particularly described in it, which she afterwards sold and conveyed to the plaintiff. When it was discovered that the particular description in the award and in the deeds did not include this piece of land, Mary J. Morgan, by an instrument under her hand and seal, assigned and transferred to the plaintiff her right to a deed conveying it. The defendant, when requested, refused to execute and deliver a deed of it to the plaintiff. But it did not appear, on the trial, that he then understood

Bissell *v.* Morgan.

that the assignment of the right to it had been made to the plaintiff.

The referee to whom the cause was referred, reported in favor of the plaintiff, and directed a conveyance of the land in question to him. From the judgment entered on that report the defendant appealed.

*J. L. Angle,* for the appellant.

*E. F. Bissell,* plaintiff, in person.

*By the Court,* DANIELS, J. The first question arising under the exceptions taken to the decision of the referee is that affecting the jurisdiction of this court over the controversy involved in this action. By the terms of the submission, it was agreed that judgment in the Supreme Court of the State of New York, might be entered upon the award, to the end that the matters in controversy should be finally concluded. And the defendant now insists, that the effect of this agreement in the submission, under the provisions made by the statute for correcting mistakes in awards, is such as to exclude the right to grant the same relief in an equitable action. It is not denied that the Court of Chancery originally entertained jurisdiction of, and granted relief in, this class of cases. And such was the settled doctrine of that court when its powers were unabridged by statute. Story says: "In cases of fraud, mistake or accident, courts of equity may, in virtue of their general jurisdiction, interfere to set aside awards, upon the same principles, and for the same reasons which justify their interference in regard to other matters where there is no adequate remedy at law." (*Eq. Jur.* § 1451.)

In the later English cases the Court of Chancery declined to exercise this jurisdiction, where the submission provided for enforcing the award by the judgment of a court. This ruling was maintained in several cases as resulting

from the submission itself, and afterwards upon that combined with the provisions of the statute relating to the execution of awards. Under that statute provision was made for enforcing awards by process of contempt, which, it was declared, should "not be stopped or delayed in its execution, by any order, rule, command, or process of any other court, either of law or equity, unless it shall be made to appear on oath to such court, that the arbitrators or umpire misbehaved themselves, and that such award, arbitration or umpirage was procured by corruption, or other undue means." (*Nichols* v. *Roe*, 3 *Myln & Keen*, 431.) This statute, it will be seen, expressly restricted the interference of courts of equity, to certain well defined and limited cases, and excluded the power of correcting mere mistakes, even though appearing upon the face of the award. While the English authorities are entirely in harmony with the prohibitions of this statute, they should not be allowed to exercise a controlling influence upon the decision of this court, untrammeled as it is by any similar restrictions.

The only instance in this State, where the English cases were allowed to prevail as controlling authority, is that of *Toppan* v. *Heath*, (1 *Paige*, 293.) But that was decided when the statute of this State relating to awards was very much like the English act of parliament. And the decisions made by their Court of Chancery could be very properly followed as authority. The statute then in force in this State provided that "any arbitration or umpirage, procured by corruption or undue means," should be judged and esteemed void, and of no effect, and accordingly set aside by any court of law or equity. (1 *R. L.* 126, § 2.)

But this implied restriction upon the jurisdiction of the court no longer stands in the way. For although the present statute confers upon the court designated in the submission, the power, within a certain time, to modify or correct the award, where there is an evident miscalcu-

Bissell *v.* Morgan.

lation of figures or an evident mistake in the description of any person, thing or property referred to in the award, still the exercise of the power is not exclusively confined to that court, (2 *R. S.* 447, § 11,) for the statute afterwards declares that "nothing contained in this title shall be construed to impair, diminish, or in any way affect the power and authority of the Court of Chancery over arbitrators' awards, or the parties thereto, (2 *R. S.* 449, § 22,) which is clearly sufficiently comprehensive to restore the original equitable jurisdiction over this class of cases. And that construction was given to it by Denio, J., and concurred in by the court, in the case of *Burnside* · v. *Whitney,* (21 *N. Y. Rep.* 148.) His language is that "the party complaining is not to be precluded from availing himself of the more ample powers of the Court of Chancery, if he considers it for his interest to resort to them." And such was declared by the revisers to have been their intention in the enactment of this section. (3 *R. S.* 775.) Under this state of the law, the objection made to the jurisdiction of the court is manifestly untenable.

The evidence very satisfactorily proved that the omission of the land in controversy, from the award, resulted from the misapprehension and mistake of the arbitrator. If no description had been given by metes and bounds, there can be no doubt the defendant would have been bound to convey it, under the general designation of the "Morgan farm." The award itself, considered with the circumstances that the land omitted from the particular description had been for many years fenced in and used with the rest as one farm, having part of the orchard and the avenues from the highway to and from the farm buildings upon it, and forming part of the door-yard, render the mistake sufficiently obvious for the interposition of the correcting powers of the court. It brings the case directly within the equitable rule, requiring the mistake to be apparent on the face of the award. For, in order to construe it prop-

erly, it should be read, as contracts are where their construction is doubtful, in view of the surrounding circumstances. (*Story's Eq. Jur.* §§ 1453–7, *and cases there referred to. Bouck* v. *Wilber*, 4 *John. Ch.* 405. *Solomons* v. *McKinstry*, 13 *John.* 27, 31. *Anderson* v. *Darcy*, 18 *Vesey*, 447.)    The assignment was legally sufficient to transfer to the plaintiff the assignor's right to a deed conveying the premises in question, without being either witnessed or acknowledged.    It was not and did not profess to be a conveyance of the land itself, but only of the right of action for the deed.    The title to the land was in the defendant, subject to the equitable obligation to convey it to the person named in the award.    And the object of the assignment was to transfer the right arising out of this obligation to the plaintiff.    This is not such an instrument as falls within the provisions of the statute relating to the manner in which conveyances of land shall be made.

No question was made as to the validity of the submission, arising out of the circumstance that Mary J. Morgan was a married woman at the time it was entered into. And it is therefore unnecessary to consider what effect that might have had upon the rights of the parties under the award.

The judgment should be affirmed.

[ERIE GENERAL TERM, September 4, 1865. *Grover, Marvin, Davis* and *Daniels,* Justices.]