[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 07-10130
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
November 28, 2007
THOMAS K. KAHN
CLERK

D. C. Docket Nos.
03-01930-CV-BE-S & 03-02901-CV-BE

2:03-CV-1930-KOB

AIG BAKER STERLING HEIGHTS, LLC,
A.B. OLATHE II LIMITED PARTNERSHIP,

Plaintiffs-Counter-Defendants-Appellants,

versus

AMERICAN MULTI-CINEMA, INC.,

Defendant-Counter-Claimant-Appellee.
_____

2:03-CV-2901-KOB

AMERICAN MULTI-CINEMA, INC.,

Plaintiff-Appellee,

versus

AIG BAKER STERLING HEIGHTS, LLC,
A.B. OLATHE II LIMITED PARTNERSHIP,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

**(November 28, 2007)**

Before MARCUS and PRYOR, Circuit Judges, and LAND,[*] District Judge.

PRYOR, Circuit Judge:

This appeal in an action to confirm an arbitration award presents two main questions, including one that has divided our sister circuits about the interpretation of the Federal Arbitration Act: (1) whether section 11(a) of the Act, which allows a district court to correct an "evident material mistake in the description of any person, thing, or property referred to in the award," embraces a mistake by a party that was not brought to the attention of the arbitration panel before the panel rendered the award; and (2) whether state or federal law governs the availability and amount of prejudgment interest in an action to confirm an arbitration award when jurisdiction is based on diversity of citizenship. AIG Baker Sterling Heights, L.L.C., and A.B. Olathe II (collectively "Baker") agreed with American Multi-Cinema, Inc., ("American") to arbitrate a dispute concerning the liability for real-estate taxes that a Kansas county assessed on property that American leased from Baker. During the arbitration, American estimated that its share of taxes for the

---

[*] Honorable Clay D. Land, United States District Judge for the Middle District of Georgia, sitting by designation.

year 2002 was $226,771.76. American contends that it erroneously admitted that it had paid nothing to Baker that year and the arbitration award to Baker included the $226,771.76. American asserts that it later discovered that it had paid the tax assessor $248,624.57, its share of taxes for 2002. The district court modified the award by deducting the $248,624.57 and declined, under federal law, to grant Baker prejudgment interest. Because we conclude that the district court exceeded its authority under section 11(a) and the availability and amount of prejudgment interest is a question of state law, we reverse and remand for further proceedings.

## I. BACKGROUND

American leased from Baker space in two shopping centers, respectively located in Michigan and Kansas. The lease agreement required American to pay Baker a portion of the real-estate taxes on the properties. A dispute arose over the amount of tax that American owed Baker. The parties agreed to submit the dispute to a three-member arbitration panel in Kansas City, Missouri. The panel awarded $866,425.18 to Baker.

Baker filed an action in the Northern District of Alabama for confirmation of the award and sought prejudgment interest. American filed an answer and counterclaim in the district court, and American filed a separate action in the Western District of Missouri to modify the award. The district court in Missouri transferred its action to the Northern District of Alabama, and the two actions were

3

consolidated. American also filed a motion to correct the award with the arbitration panel, but the panel concluded that the motion by American was untimely.

A portion of the award, $226,771.76, corresponds to the liability of American to Baker for taxes on the Kansas property in 2002. Ownership of the property changed in the middle of 2002, and the landlord that replaced Baker asked American to pay the share of taxes that American owed for the first half of the year directly to the county tax authority. American did so, but "now realizes that this payment was a mistake." American contends that it should have made this payment to Baker, which should have paid the county. American argues that it is entitled to a credit for the amount of tax it paid on the Kansas property for the 2002 tax year.

American did not present any of this information to the arbitration panel before the panel rendered its award. American admitted to the panel that its unpaid tax liability for 2002 on the Kansas property was approximately $226,771. The facts admitted to the arbitration panel did not reflect the payment by American to the county because American "did not realize its mistake until it was preparing to pay the arbitration award."

The district court denied the request that Baker made for confirmation of the award and granted the motion by American for modification on the basis of an

4

"evident material mistake." The court reduced the balance of the award by $248,624.57—the amount that American paid to the county. The court exercised "discretion <u>not</u> to award interest," and the court found that American had already paid $593,375.75 of the remaining amount owed to Baker. The court entered judgment in favor of Baker in the amount of $78,424.86. On appeal, Baker argues that the district court erred when it modified the award, declined to award prejudgment interest, and found that Baker had already paid part of the amount of the award.

## II. STANDARD OF REVIEW

We review <u>de novo</u> questions of law that concern the modification of an arbitration award, <u>Offshore Marine Towing, Inc. v. MR23</u>, 412 F.3d 1254, 1255 (11th Cir. 2005), and choice of law questions, <u>Federated Rural Elec. Ins. Exch. v. R.D. Moody & Assocs., Inc.</u>, 468 F.3d 1322, 1325 (11th Cir. 2006). We review for clear error findings of fact by a district court. <u>Gaskin v. Sec'y, Dep't of Corr.</u>, 494 F.3d 997, 1001 (11th Cir. 2007).

## III. DISCUSSION

Baker makes three arguments on appeal. First, Baker argues that the district court exceeded its authority to modify an arbitration award under the Federal Arbitration Act, 9 U.S.C. §§ 1–16. Second, Baker argues that the district court should have followed state, not federal, law to determine whether Baker was

5

entitled to prejudgment interest and the amount of interest. Third, Baker argues that the district court erred when it found that American paid a portion of the judgment. We address each argument in turn.

*A. The District Court Did Not Have Authority To Modify the Arbitration Award on the Basis of a Mistake.*

"The Federal Arbitration Act presumes that arbitration awards will be confirmed, and judicial review of an arbitration award is narrowly limited," Rosenweig v. Morgan Stanley & Co., 494 F.3d 1328, 1333 (11th Cir. 2007) (citing B.L. Harbert Int'l, LLC v. Hercules Steel Co., 441 F.3d 905, 909 (11th Cir. 2006)), but a district court may modify or correct an arbitration award "[w]here there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award," 9 U.S.C. § 11(a). The district court relied on this authority to modify the award that Baker received. The court ruled that the failure of the stipulated facts to reflect that American had paid $248,624.57 to the county was an "evident material mistake." We disagree.

The "starting point for interpreting a statute is the language of the statute itself." Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc., 447 U.S. 102, 108, 100 S. Ct. 2051, 2056 (1980). American concedes that the arbitration award did not contain a "miscalculation of figures," so we address only the part of the Federal Arbitration Act that permits a district court to correct an "evident material mistake

6

in the description of any person, thing, or property referred to in the award." 9 U.S.C. § 11(a). The authority of the district court to modify the award turned on the meaning of this text.

The plain language of the statute embraces only an "evident material mistake" that appears in a description "in the award." Because the arbitration panel crafts the award, only the panel can make a mistake in the award. To make a "mistake" is to "understand wrongly" or to "recognize or identify incorrectly." Webster's II New Riverside University Dictionary 759 (1984). What American complains about is not a "mistake," but rather "ignorance"—a "lack of knowledge." Id. at 608.

The arbitration panel did not "understand wrongly." The panel lacked knowledge because American never provided the panel with information about the tax payment to the county. The arbitration award that Baker received may be a product of ignorance attributable to an oversight by American, but the award does not contain an "evident material mistake in the description of any person, thing, or property referred to in the award." 9 U.S.C. § 11(a).

Ordinarily our interpretation of the text of section 11(a) would be the end of the matter, United States v. Fisher, 6 U.S. (2 Cranch) 358, 399 (1805) ("Where a law is plain and unambiguous . . . no room is left for construction."), but there is an odd wrinkle in this appeal. A sister circuit has construed what we consider to be

7

the plain and unambiguous text of section 11(a) to mean something different from our interpretation. American relies heavily on that decision to support its reading of section 11(a).

The Fourth Circuit has interpreted section 11(a) to embrace mistakes that were made by parties that were never brought to the attention of the arbitration panel, see Transnitro, Inc. v. M/V Wave, 943 F.2d 471, 474 (4th Cir. 1991); see also Eljer Mfg., Inc. v. Kowin Dev. Corp., 14 F.3d 1250, 1254 (7th Cir. 1994) (citing with approval Transnitro), but a more recent decision of that circuit reads section 11(a) in the same manner that we do. In Apex Plumbing Supply, Inc. v. U.S. Supply Co., Inc., the Fourth Circuit held that a mistake "was not 'evident' because it did not appear on the face of the arbitration award." 142 F.3d 188, 194 (4th Cir. 1998). We are convinced that the earlier decision of the Fourth Circuit in Transnitro is erroneous.

Even if we were to assume that the plain language of section 11(a) is ambiguous, which would mean that it is reasonably susceptible to another interpretation, we would reach the same conclusion. We would be guided by the established meaning that the words of section 11(a) had at the time they were adopted. "[I]f a word is obviously transplanted from another legal source, whether the common law or other legislation, it brings the old soil with it." Evans v. United States, 504 U.S. 255, 260 n.3, 112 S. Ct. 1881, 1885 n.3 (1992) (quoting Felix

8

Frankfurter, Some Reflections on the Reading of Statutes, 47 Colum. L. Rev. 527, 537 (1947)) (internal quotation marks omitted). Stated differently, "[w]hen Congress uses language with a well-known legal meaning," we generally presume "the statute to incorporate that understood meaning." Assa'ad v. U.S. Att'y Gen., 332 F.3d 1321, 1329 (11th Cir. 2003).

The language of the Federal Arbitration Act, which was enacted in 1925, was transplanted from the Arbitration Law that the State of New York enacted in 1920, Arbitration Law, ch. 275, 1920 N.Y. Laws 803 (codified as amended at N.Y. C.P.L.R. §§ 7501–7514); see also J.P. Chamberlain, Current Legislation: The Commercial Arbitration Law, 9 A.B.A. J. 523, 524 (1923); Larry J. Pittman, The Federal Arbitration Act: The Supreme Court's Erroneous Statutory Interpretation, Stare Decisis, and a Proposal for Change, 53 Ala. L. Rev. 789, 797 (2002); Michael R. Holden, Note, Arbitration of State-Law Claims by Employees: an Argument for Containing Federal Arbitration Law, 80 Cornell L. Rev. 1695, 1705 & n.48 (1995), and the settled meaning of that earlier law is consistent with our interpretation. The language of section 11(a) of the federal Act matched almost verbatim the language of section 2375 of the New York Code of Civil Procedure, which had long been a part of New York law and the New York Arbitration Law incorporated by reference. See N.Y. Code Civ. P. § 2375 (Matthew Bender 1916) (codified as amended at N.Y. C.P.L.R. § 7511(c)) (requiring a court to modify or

correct an arbitration award "[w]here there was an evident miscalculation of figures, or an evident mistake in the description of any person, thing, or property, referred to in the award"); Arbitration Law § 8, 1920 N.Y. Laws at 806. By 1920, when New York passed its Arbitration Law, the New York Court of Appeals had recognized that, to fall within the scope of section 2375, a mistake or miscalculation must have appeared in the award "on its face." In re Burke, 191 N.Y. 437, 440, 84 N.E. 405, 406 (1908). This principle, which has been part of New York jurisprudence for many years, see, e.g., Matter of Tamaron Invs., Inc., 637 N.Y.S.2d 637, 638 (N.Y. Sup. Ct. 1996); Moore v. Eadie, 245 N.Y. 166, 171, 156 N.E. 653, 655 (1927) (citing Burke, 191 N.Y. at 437, 84 N.E. at 405); Sweet v. Morrison, 116 N.Y. 19, 33, 22 N.E. 276, 280 (1889); Bissell v. Morgan, 56 Barb. 369 (N.Y. Gen. Term 1865), was part of the "old soil" that accompanied the language that was transplanted from New York law into section 11(a) of the Federal Arbitration Act in 1925. Section 11(a), which has not changed materially since it was first enacted, continues to embrace this principle.

Our reading of section 11(a) is also consistent with the purpose of the Federal Arbitration Act: "to relieve congestion in the courts and to provide parties with an alternative method for dispute resolution that is speedier and less costly than litigation." Caley v. Gulfstream Aerospace Corp., 428 F.3d 1359, 1367 (11th Cir. 2005) (internal quotation marks omitted). Because arbitration is an alternative

10

to litigation, judicial review of arbitration decisions is "among the narrowest known to the law." Del Casal v. E. Airlines, Inc., 634 F.2d 295, 298 (5th Cir. Unit B Jan. 1981). That narrow review is why a court cannot vacate an arbitration award for fraud based on information available before or during the arbitration that the parties, through lack of diligence, failed to discover. Bonar v. Dean Witter Reynolds, Inc., 835 F.2d 1378, 1383 (11th Cir. 1988).

This appeal illustrates the danger of broad judicial review of arbitration awards. The parties elected to settle their dispute by arbitration rather than litigation, but this appeal is now before us after more than three years of litigation. The district court erred when it modified the award.

*B. State Law Governs the Availability and Amount of Prejudgment Interest.*

The discussion by the district court of its decision not to grant prejudgment interest is brief and not entirely clear. We believe that the rationale for the decision of the district court can be read two ways. Either the district court determined that it had discretion to decline to grant prejudgment interest under federal law, see Indus. Risk Insurers v. M.A.N. Gutehoffnungshutte GmbH, 141 F.3d 1434, 1447 (11th Cir. 1998) (under federal law, prejudgment interest is a matter of the discretion of the district court), or it determined that prejudgment interest is unavailable because the award was modified rather than confirmed. Under either reading, the district court erred. We address each of these readings in turn.

The district court erred to the extent that it exercised discretion under federal law to decline to award prejudgment interest because state law governs the entitlement of Baker to prejudgment interest. The jurisdiction of the district court was based on diversity of citizenship. In diversity cases, the availability and amount of prejudgment interest is ordinarily governed by state law. See Venn v. St. Paul Fire & Marine Ins. Co., 99 F.3d 1058, 1066–67 (11th Cir. 1996).

An exception to this general rule exists when "affirmative 'countervailing federal interests' are at stake that warrant application of federal law," Esfeld v. Costa Crociere, S.P.A., 289 F.3d 1300, 1307 (11th Cir. 2002) (quoting Gasperini v. Ctr. for Humanities, Inc., 518 U.S. 415, 432, 116 S. Ct. 2211, 2222 (1996)), but the Federal Arbitration Act does not place countervailing federal interests at stake in this appeal. As the Supreme Court has explained, the Act "is something of an anomaly in the field of federal-court jurisdiction. It creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate, yet it does not create an independent federal-question jurisdiction under 28 U.S.C. § 1331 or otherwise." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 25 n.32, 103 S. Ct. 927, 942 n.32 (1983). The Act places arbitration agreements on the same footing under state law as other agreements. Perry v. Thomas, 482 U.S. 483, 492 n.9, 107 S. Ct. 2520, 2527 n.9 (1987). The Act serves federal interests adequately when state law answers questions

concerning the availability and amount of prejudgment interest. Those are questions about which the Act is silent.

American argues that federal law governs the availability and amount of prejudgment interest whenever federal law provides a rule of decision. We disagree. The decision upon which American relies for this argument, Kilpatrick Marine Piling v. Fireman's Fund Insurance Co., is an admiralty case in which our jurisdiction was based on diversity. 795 F.2d 940, 947–48 (11th Cir. 1986). Kilpatrick held "that admiralty courts have discretion in deciding prejudgment interest," id., but admiralty law is a context in which a countervailing federal interest—"the federal interest in uniformity"—sometimes requires a choice of federal common law rather than state law, Mink v. Genmar Indus., Inc., 29 F.3d 1543, 1548 (11th Cir. 1994).

In the absence of a federal interest that requires the application of federal law, the existence of a federal rule of decision in a diversity case does not affect the question whether the availability and amount of prejudgment interest is governed by state or federal law. We join our sister circuits that have addressed this question and hold that state law governs the availability and amount of prejudgment interest in diversity cases involving the Federal Arbitration Act. See Executone Info. Sys., Inc. v. Davis, 26 F.3d 1314, 1329 (5th Cir. 1994); Northrop Corp. v. Triad Int'l Mktg., S.A., 842 F.2d 1154, 1155 (9th Cir. 1988). The district court erred to the

13

extent that it applied federal law to determine whether Baker was entitled to prejudgment interest.

The district court also erred to the extent that it held that prejudgment interest is unavailable because the arbitration award was modified rather than confirmed. The availability and amount of prejudgment interest does not depend on whether the district court confirms or modifies the award. A judgment entered under the Federal Arbitration Act on an award  has the force and effect of a judgment recovered in any other civil action, regardless whether the court enters an order "confirming, modifying, or correcting the award." 9 U.S.C. § 13; see also Parsons & Wittemore Ala. Mach. & Servs. Corp v. Yeargin Constr. Co., 744 F.2d 1482, 1484 (11th Cir. 1984). As in any other civil action based on diversity of citizenship, the district court must look to state law to determine the availability and amount of prejudgment interest when it enters a judgment, regardless of whether that judgment confirms or modifies an award under the Federal Arbitration Act. The district court erred to the extent that it held otherwise.

Our decision that state law governs the availability and amount of prejudgment interest is not the end of the matter. On remand, the district court must determine under the choice-of-law rules of Alabama, Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496, 61 S. Ct. 1020, 1021 (1941), which state law governs the availability and amount of interest. Baker argues that Missouri law

14

applies and entitles Baker to prejudgment interest "at the rate of nine percent per annum." Mo. Ann. Stat. § 408.020. American argues for the application of Alabama law, which provides for prejudgment interest at a lower rate of six percent. Ala. Code § 8–8–1. The district court should resolve that issue in the first instance.

### C. The Payment by American to Baker.

Baker has argued that the district court erred when it found that "Defendant AMC has already paid $539,375.75" of the arbitration award and reduced the balance due to Baker by that amount. American explains that the district court directed counsel for American to bring a check for this amount, which represents the amount of the award that was not in dispute, to a status conference that the court held. American contends that it complied and presented the check to counsel for Baker in the presence of the district court.

Baker does not dispute that it received the payment from American. In its brief, Baker argued that the district court erred because no evidence of the payment appears "in the record," even though statements by counsel for Baker recorded in a later hearing, a transcribed colloquy between the court and counsel for American, and the order of the district court all reflect the payment. Baker wisely abandoned this position at oral argument, so we need not address this issue further.

## IV. CONCLUSION

The order of the district court modifying the arbitration award and declining to award prejudgment interest is **REVERSED**. We **REMAND** to the district court for further proceedings consistent with this opinion.