PER CURIAM.
Turquoise Properties Gulf, Inc. (“Turquoise”), appeals from a judgment of the Baldwin Circuit Court denying its motion to alter, amend, or vacate an arbitration award in an action filed by Clark A. Cooper and David L. Faulkner, Jr., and by Hugh Overmyer and Adrienne Overmyer (hereinafter referred to collectively as “the claimants”). We reverse and remand.

I. Facts and Procedural History

On April 24, 2005, the Overmyers signed a purchase and escrow agreement by which they agreed to purchase a condominium to be built as part of “phase I” of a condominium complex Turquoise was developing in Orange Beach. The purchase price for the condominium was $1,200,900. In conjunction with the purchase, the Ov-ermyers posted a letter of credit in the amount of $240,180, which constituted 20% of the purchase price.
On October 20, 2005, Cooper and Faulkner signed a purchase and escrow agreement agreeing to purchase another condominium to be built as part of “phase I” of the same condominium complex. The purchase price for that condominium was $1,360,900. Cooper and Faulkner posted a letter of credit in the amount of $272,180, which, like the Overmyers’ letter of credit, constituted 20% of the purchase price to which they had agreed.
When construction neared substantial completion, the claimants declined to “close” on the purchases on their respective units, allegedly because Turquoise had failed to build an outdoor pool and sundeck area or to provide individual storage units and private cabanas, which, the claimants alleged, it had agreed to build and to provide.
The portion of the purchase and escrow agreements pertinent to this appeal provides as follows:
“Default: ... If Purchaser shall fail to close as required by this Agreement ... Developer shall ... retain all sums paid to Developer or Escrow Agent (including, but not limited to any deposits paid by Purchaser, and any interest earned hereon); hereunder as agreed upon and liquidated damages and in full settlement of any claim for damages. These liquidated damages are limited to 15% of the Purchase Price, exclusive of any interest [owed] by the Purchaser, that has been paid by Purchaser, and Developer agrees to refund to Purchaser any amount which remains from the payments/sums paid to Developer or Escrow Agent made after subtracting 15% of the Purchase Price, excluding interest.”
As noted above, the claimants had paid Turquoise 20% of the total purchase price of each of the two units. When the claimants refused to close on their units, however, Turquoise did not refund the 5% in excess of the 15% of the purchase price the claimants had paid (“the excess 5%”).
The purchase and escrow agreements also contained an arbitration provision, which provided that any dispute between the parties would be “governed by the Federal Arbitration Act (9 U.S.C. § 1 et seq.)” and that the arbitration would be “administered by the American Arbitration Association in accordance with the Construction Industry Dispute Resolution Procedures of the American Arbitration Association .... ”
On June 18, 2008, Cooper and Faulkner filed with the American Arbitration Association a demand for arbitration of their claims against Turquoise. On June 23, 2008, the Overmyers filed a similar de *1252 mand. The initial arbitration demands contained claims of breach of contract, fraud, and violations of the Interstate Land Sales Full Disclosure Act, 15 U.S.C. § 1701 et seq. The claimants amended their arbitration demands in January 2009 to include a conversion claim based on Turquoise’s refusal to refund the excess 5% in accordance with the default provision of the purchase and escrow agreements. The claimants alleged that Turquoise informed them that it would not refund the excess 5% unless they dismissed their arbitration demands, which the claimants declined to do. In their conversion claims, the claimants contended they had suffered “damage[] and mental anguish and stress” as a result of the conversion of their deposit money. The claimants requested relief in the form of compensatory damages, punitive damages, costs, interest, and reasonable attorney fees.
It is undisputed that in June 2009 Turquoise returned the excess 5% to the claimants because it was ordered by the arbitrator to do so. Cooper and Faulkner were refunded approximately $68,000; the Overmyers were refunded approximately $60,000. In an evidentiary hearing before the arbitrator held on January 25-27, 2010, the claimants acknowledged that Turquoise had paid them the excess 5%[1]
On June 8, 2010, the arbitrator entered a lengthy arbitration award containing findings of fact and conclusions of law. Pertinent to this appeal, the arbitrator recounted in his rendition of the facts that “[t]he [excess] 5% was returned to Faulkner, Cooper, and the Overmyers in June, 2009.” Concerning the claimants’ conversion claims, the arbitrator concluded as follows:
“The Claimants’ made demand for return of the 5% excess on September 11, 2008. At this time the 5% was [not] in dispute. [Turquoise] had a contractual obligation to return these funds within a reasonable time. The fact that they were in escrow is no defense. [Turquoise’s] obligation was to act jointly with Claimants to instruct return of the excess funds. It is obvious that Bank would have complied then just as it complied with another arbitrator’s order in June 2009. The Arbitrator holds that a reasonable amount of time for [Turquoise] to act was thirty days; therefore, the Arbitrator holds that as of October 12, 2008, [Turquoise] converted the excess funds.
“The general measure of damages for conversion is the value of the property at the time of the conversion. Jenelle Mims Marsh and Charles W. Gamble, Alabama Law of Damages § 36.51 (5th ed.2004). In addition, Claimants are entitled to interest at 6% from the date of the taking. 2 Alabama Pattern Jury Instructions (Civil) 39.01 (2nd ed.) Therefore, Claimants are due interest from October 12, 2008 until the money was ordered to be returned on June 15, 2009.
“The Arbitrator finds that an award of punitive damages is not warranted.”
The arbitrator awarded damages to the claimants as follows:
“In favor of Clark Cooper and David Faulkner and against Turquoise Properties Gulf, Inc., on their claim for conversion, and within thirty (30) days from the date of this award Turquoise Prop *1253 erties Gulf, Inc. will pay them jointly the sum of SEVENTY ONE THOUSAND ONE HUNDRED THIRTY TWO DOLLARS AND NINETEEN CENTS ($71,132.19).
[[Image here]]
“In favor of Hugh Overmyer and Adrienne Overmyer and against Turquoise Gulf Properties Gulf, Inc. on their claim for conversion, and within thirty (30) days from the date of this award Turquoise Properties Gulf, Inc. will pay them the amount of SIXTY TWO THOUSAND SEVEN HUNDRED SIXTY NINE DOLLARS AND TWENTY THREE CENTS ($62,769,23).
[[Image here]]
“This Award is in full settlement of all claims submitted to this arbitration. All claims not expressly granted are denied.”
On June 11, 2010, Turquoise filed a motion to modify the arbitration award on the ground that the arbitrator had made a computational error in his calculation of damages by failing to credit Turquoise for refunding to the claimants the excess 5%. Turquoise argued that the damages awarded amounted to a double recovery for the claimants and that the damages on the conversion claims should have consisted solely of the interest that accrued on the excess 5% during the period the funds were converted. On June 23, 2010, the arbitrator denied Turquoise’s motion to modify, explaining:
“Rule 47 Construction Industry Arbitration Rules and Mediation Procedures (amended and effective September 1,2007), controls the disposition of the motion. The rule states, as follows:
“ ‘Within twenty calendar days after the transmittal of an award, the arbitrator on his or her initiative, or any party, upon notice to the other parties, may request that the arbitrator correct any clerical, typographical, technical or computational errors in the award. The arbitrator is not empowered to re-determine the merits of any claim already decided.
“ ‘If the modification request is made by a party, the other parties shall be given ten calendar days to respond to the request. The arbitrator shall dispose of the request within twenty calendar days after transmittal by the AAA to the arbitrator of the request and any response thereto.
“ ‘If applicable law provides a different procedural time frame, that procedure shall be followed.’
“Turquoise’s motion asks the arbitrator to ‘re-determine the merits of [the conversion] claim already decided.’ Neither Rule 47 nor the parties’ arbitration agreements empower! ] the Arbitrator to rehear and re-determine whether a claim was correctly decided as a matter of law. Therefore, the motion to modify is denied.”
On July 22, 2010, Turquoise appealed the arbitration award to the Baldwin Circuit Court pursuant to Rule 71B, Ala. R. Civ. P. The next day, the claimants filed in the circuit court a motion to enter the arbitrator’s award as a final judgment; the circuit court granted the claimants’ motion on August 3, 2010. On August 16, 2010, Turquoise filed a motion to alter, amend, or vacate the final judgment of the arbitrator. On September 21, 2010, the circuit court denied Turquoise’s motion. Turquoise appeals from the judgment of the circuit court.

II. Standard of Review

“The standard by which an appellate court reviews a trial court’s order confirming an arbitration award under the Federal Arbitration Act is that questions of law are reviewed de novo and *1254 findings of fact are reviewed only for clear error. See Riccard v. Prudential Ins. Co., 307 F.3d 1277, 1289 (11th Cir.2002).”
Hereford v. D.R. Horton, Inc., 13 So.3d 375, 378 (Ala.2009).

III. Analysis

As it did before the arbitrator and before the circuit court, Turquoise contends on appeal that the arbitrator erred in computing damages on the claimants’ conversion claims because, it says, the arbitrator failed to account for Turquoise’s refund to the claimants of the excess 5%. As they did below, the claimants respond that Turquoise is seeking correction of a legal or factual mistake concerning the amount of damages awarded, which, they say, this Court lacks the power to do under the Federal Arbitration Act (“the FAA”).
The parties agree that 9 U.S.C. § 11 of the FAA prescribes the circumstances under which a court may modify an arbitration award.[2] That section provides:
“In either of the following cases the United States court in and for the district wherein the award was made may make an order modifying or correcting the award upon the application of any party to the arbitration—
“(a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.
“(b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.
“(c) Where the award is imperfect in matter of form not affecting the merits of the controversy.
“The order may modify and correct the award, so as to effect the intent thereof and promote justice between the parties.”
Turquoise contends that the arbitrator’s failure to credit its refund of the excess 5% in computing the damages awarded to the claimants on their conversion claims constituted an “evident material miscalculation of figures.” Turquoise observes that the arbitrator noted in his award that Turquoise had refunded to the claimants the excess 5% in June 2009. It notes that the arbitrator correctly stated that the rule for calculating damages on a claim of conversion is the value of the property at the time of the conversion plus interest from the time of the taking. See, e.g., Roebuck Auto Sales, Inc. v. Wallace, 293 Ala. 231, 235, 301 So.2d 546, 549 (1974) (stating that “[i]n conversion the recovery traditionally sought is the fair value of the chattel at the time of conversion, plus interest”). Turquoise also concedes that the fact that it refunded the undisputed portion of the claimants’ deposits, i.e., the excess 5%, did not bar the claimants’ conversion claims. See, e.g., Brown v. Campbell, 536 So.2d 920, 922 (Ala.1988) (observing that “recovery of the property by the plaintiff does not bar a suit for conversion but merely reduced the plaintiffs damages by the value of the property at the time of its return”). Consequently, Turquoise does not dispute the arbitrator’s finding that it converted a portion of the claimants’ deposits.
Turquoise notes that, despite the arbitrator’s acknowledgment that Turquoise refunded the excess 5% and despite his *1255 recounting of the law concerning damages for conversion, the arbitrator still awarded Faulkner and Cooper $71,132.19 and the Overmyers $62,769.23 in damages on their conversion claims. Adding 6% interest for the period of the conversions to the excess 5%, the arbitrator’s damages awards for conversion equal the exact amount the claimants’ damages would have been without crediting Turquoise for refunding the excess 5%. Therefore, Turquoise contends, the arbitrator committed an “evident material miscalculation” in the damages award.
The claimants contend that the error alleged by Turquoise is not a simple miscalculation but amounts to a failure to apply the law correctly to the facts. They observe that 9 U.S.C. § 11(a) does not permit a court to correct such a mistake. In support of their argument, the claimants emphasize the restrictive nature of the review that is permitted under § 11(a):
“[RJelief under Section 11(a) is limited to ‘simple formal, descriptive, or mathematical mistake,’ Stroh Container Co. v. Delphi Industries, Inc., 783 F.2d 743, 749 (8th Cir.1986), not disagreement over factual or legal decisions deliberately made. Most cases discussing Section 11(a) address the alleged miscalculation of figures. These cases make clear that the provision reaches only computational errors, not legal or factual mistakes concerning the amount of damages that should be awarded. E.g., Grain v. Trinity Health, Mercy Health Services Inc., 551 F.3d 374, 378-79 (6th Cir.2008) (error in determining start and stop dates for interest is not correctable under Section 11(a)); U.S. Energy Corp. v. Nukem, Inc., [ (No. 96-1532, Oct. 22, 1998) ] (10th Cir.1998) [ (unpublished opinion) ] (flawed logic in the award of lost profits is not correctable under Section 11(a)); UHC Management Co. v. Computer Sciences Corp., 148 F.3d 992, 998 (8th Cir.1998) (damages award inconsistent with governing state law is not correctable under Section 11(a)); see also B.L. Harbert International, LLC v. Hercules Steel Co., 441 F.3d 905, 909 (11th Cir.2006) (Section 11(a) can be used to correct scrivener’s errors in stating the damages awarded). Simply put, Section 11(a) does not apply to ‘an interpretation of the law and facts as [the arbitrator] saw them.’ Capital Wholesale Electric, Inc. v. McCarthy Construction, [ (No. 93-16578, March 9, 1995) ] (9th Cir.1995) [ (unpublished opinion) ]; accord Apex Plumbing Supply, Inc. v. U.S. Supply Co., 142 F.3d 188, 194 (4th Cir.1998) (‘[CJourts have held generally that even a mistake of fact or misinterpretation of law by an arbitrator provides insufficient grounds for the modification of an award’ under Section 11(a)).”
Waddell v. Holiday Isle, LLC, (No. 09-0040-WS-M, Aug. 4, 2009) (S.D.Ala.2009) (not selected for publication in F.Supp.2d).
Turquoise acknowledges that the review provided by § 11(a) is narrow, but it observes that it has been held that
“[wjhen an arbitration award orders a party to pay damages that have already been paid or which are included elsewhere in the award, a court may modify the award. Double recovery constitutes a materially unjust miscalculation which may be modified under section 11 of the Federal Arbitration Act.”
Eljer Mfg., Inc. v. Kowin Dev. Corp., 14 F.3d 1250, 1254 (7th Cir.1994), cert. denied, 512 U.S. 1205, 114 S.Ct. 2675, 129 L.Ed.2d 810 (1994) (footnote omitted).[3] *1256 Turquoise argues that the arbitrator’s award clearly constitutes a double recovery by the claimants because the excess 5% was already returned to them. “In Eljer, the [United States Court of Appeals for the] Seventh Circuit determined that the district court properly modified a damage[s] award because the basis for the arbitrator’s award was ‘no mystery’ and the court did not have to speculate as to what the arbitrator’s award was attempting to redress. Eljer, 14 F.Sd at 1254.” Jimmy John’s Franchise, LLC v. Kelsey, 549 F.Supp.2d 1034, 1040 (C.D.Ill.2008). Turquoise contends that, as was true in Eljer, the mistake by the arbitrator is evident on the face of the award because the arbitrator stated the correct measure of damages on a conversion claim and acknowledged that Turquoise had refunded the excess 5% to the claimants, yet he awarded the claimants damages “on their claim[s] for conversion” as if no refund had occurred. Turquoise further notes that the arbitrator expressly declined to award punitive damages; thus, the award could not represent anything other than compensation for the conversion itself.
The claimants first counter that the United States Court of Appeals for the Eleventh Circuit “rejected the reasoning of Eljer ” in AIG Baker Sterling Heights, LLC v. American Multi-Cinema, Inc., 508 F.3d 995 (11th Cir.2007). The Eleventh Circuit in AIG Baker, however, did not disagree with the Eljer court’s conclusion that a double recovery can constitute an “evident material miscalculation of figures” under 9 U.S.C. § 11(a). In fact, the AIG Baker court’s comments concerning Eljer[4] were not directed to a “miscalculation of figures” because the appellant had conceded that the award did not contain any such miscalculation. See AIG Baker, 508 F.3d at 999. Instead, AIG Baker held simply that to make a “mistake” within the meaning of § 11(a) is “to understand wrongly” and that this is a different matter from an error made because an arbitrator has not been made aware of pertinent information or facts. See id. (stating that what the appellant “complains about is not a ‘mistake,’ but rather ‘ignorance’ — a ‘lack of knowledge’” (quoting the definition of the term “mistake” in Webster’s II New Riverside University Dictionary 759 (1984))).
The claimants also note the AIG Baker court’s embrace of the notion that, in order *1257 to be “evident” within the meaning of 9 U.S.C. § 11(a), a mistake must appear on the face of an arbitration award. See note
4, supra. No conflict with AIG Baker exists in this regard, however, because the arbitrator was put on notice of the mistake and, as has been noted, the mistake is apparent on the face of the award.
Finally, we note that Eljer has been cited by several courts for the proposition that a double recovery constitutes an “evident material miscalculation of figures.”[5]
The claimants also contend that Turquoise is speculating that the award constitutes a double recovery because the arbitrator could “have awarded damages for mental anguish and stress in an amount equal to his award or some part of it.” It is the claimants who, in fact, are speculating, given that the arbitrator discussed “[t]he general measure of damages for conversion” as “the value of the property at the time of the conversion,” plus interest, and then awarded the claimants damages “on their elaim[s] for conversion” in the exact amounts of the excess 5% plus interest. The arbitrator gave absolutely no indication that the damages award included compensation for mental anguish or stress, and his award stated that “[a]ll claims not expressly granted are denied.” The claimants offer no other explanation for why the award appears on its face to be a double recovery.[6] They also ignore the fact that the “proposed order” they submitted to the arbitrator after the evi-dentiary hearing stated that “[Respondent Turquoise Properties Gulf, Inc., shall be credited with the amount paid on or about June 24, 2009 to Claimants. Claimants shall not obtain a double recovery.” Thus, the claimants acknowledged to the arbitrator that Turquoise should receive a credit on the conversion claims for the moneys already refunded to the claimants, but such a credit is not evident in the final arbitration award.
Finally, the claimants argue that the issue whether the arbitration award represents a double recovery was submitted to and decided by the arbitrator and that, consequently, Turquoise’s appeal of that issue is barred by the doctrine of collateral estoppel. The claimants correctly note that this Court stated in Lee L. Saad Construction Co. v. DPF Architects, P.C., 851 So.2d 507, 516 (Ala.2002), that, “[i]n Alabama, the ‘ “doctrines of [res judi-cata and collateral estoppel] apply as well in arbitration as they do to adjudications in judicial proceedings.” ’ ” The first element of collateral estoppel, however, is ““‘that an issue in a prior action was identical to the issue litigated in the present action.” ’ ” Id. at 520 (quoting Biles v. Sullivan, 798 *1258 So.2d 708, 712 (Ala.2000), quoting in turn Smith v. Union Bank & Trust Co., 653 So.2d 983, 934 (Ala.1995) (emphasis added)).[7] Turquoise filed a permissible appeal to the circuit court of the arbitration award pursuant to Rule 71B, Ala. R. Civ. P., and it then filed an appeal of the circuit court’s judgment to this Court. Thus, the arbitration proceeding at issue is not a “prior action”; the present appeal is a part of the same action, and collateral estoppel cannot apply to the arguments made by Turquoise in this appeal.
Based on the foregoing, we reverse the judgment of the circuit court denying Turquoise’s motion to modify the arbitration award, and we remand the action for the circuit court to enter a judgment consistent with this opinion.
REVERSED AND REMANDED.
MALONE, C.J., and WOODALL, BOLIN, MURDOCK, and MAIN, JJ., concur.

. Though the parties and the record do not indicate a date, at a certain point before the evidentiary hearing the claimants’ claims were consolidated into one arbitration action along with the claims of four other similarly situated claimants who are not parties to this appeal.

. See also 9 U.S.C. § 10, providing grounds upon which a trial court may enter an order "vacating” an arbitration award.

. Alabama law similarly does not countenance double recoveries.
"Alabama law generally bars double recoveries, and, although ' "a party is entitled to *1256 full compensation for his injuries,” ’ Wilboum v. Ray, 603 So.2d 969, 972 (Ala.1992) (quoting McClendon v. City of Boat, 395 So.2d 21, 26 (Ala.1981)), he ' "can gain but one satisfaction.” ' Lee L. Saad Constr. Co. v. DPF Architects, P.C., 851 So.2d 507, 521 (Ala.2002) (quoting Mobile Ins., Inc. v. Smith, 441 So.2d 894, 896 (Ala.1983)).”
Ex parte Barnett, 978 So.2d 729, 732 (Ala.2007).

. The only portion of AIG Baker that mentions Eljer states as follows:
"The Fourth Circuit has interpreted section 11(a) to embrace mistakes that were made by parties that were never brought to the attention of the arbitration panel, see Transnitro, Inc. v. M/V Wave, 943 F.2d 471, 474 (4th Cir.1991); see also Eljer Mfg., Inc. v. Kowin Dev. Corp., 14 F.3d 1250, 1254 (7th Cir.1994) (citing with approval Transnitro ), but a more recent decision of that circuit reads section 11(a) in the same manner that we do. In Apex Plumbing Supply, Inc. v. U.S. Supply Co., the Fourth Circuit held that a mistake 'was not "evident” because it did not appear on the face of the arbitration award.' 142 F.3d 188, 194 (4th Cir.1998). We are convinced that the earlier decision of the Fourth Circuit in Trans ni-tro is erroneous.”
508 F.3d at 1000. It is readily apparent from the above-quoted passage that the Eleventh Circuit did not address — let alone reject — the Fourth Circuit’s conclusion that a double recovery may constitute an "evident material mistake.” This is not surprising, given that there was no allegation in AIG Baker of a double recovery.

. See, e.g., Consolidated Biscuit Co. v. Karpen, (No. 3:00CV7703, Aug. 28, 2001) (N.D.Ohio) (not selected for publication in F.Supp.2d) (stating that, "[i]f a panel awards damages that have already been paid, a court has authority to modify the award”); TD Ameritrade, Inc. v. McLaughlin, Piven, Vogel Sec., Inc., 953 A.2d 726, 737 (Del.Ch.2008) (quoting with approval Eljer's proposition concerning a double recovery); Mandl v. Bailey, 159 Md. App. 64, 98, 858 A.2d 508, 528 (2004); Saw-telle v. Waddell & Reed, Inc., 304 A.D.2d 103, 116, 754 N.Y.S.2d 264, 275 (2003); and Cole v. Hiller, 715 So.2d 451, 456 (La.Ct.App. 1998).

. See Cole v. Hiller, 715 So.2d 451, 456 (La.Ct.App.1998) (stating that "[t]he court may ... vacate an award founded on a material mistake of undisputed fact unless the party opposing the motion to vacate offers an alternative rational explanation for the award based on the evidence before the arbitrator” (emphasis omitted) (citing National Post Office v. United States Postal Serv., 751 F.2d 834 (6th Cir.1985), Valentine Sugars, Inc. v. Donau Corp., 981 F.2d 210 (5th Cir.1993), cert. denied, 509 U.S. 923, 113 S.Ct. 3039, 125 L.Ed.2d 725 (1993), and Electronics Corp. of America v. International Union of Elec. Workers, 492 F.2d 1255 (1st Cir.1974))).

. In Lee L. Saad Construction, Lee L. Saad Construction Co. ("Saad”) demanded — and was granted — arbitration in response to an action filed by the Baldwin County Board of Education ("the Board”). An arbitration proceeding before the director of the Alabama Building Commission occurred between Saad and the Board. After the director issued his decision, Saad filed a cross-claim against several defendants that involved the same contract that was at issue in the action filed by the Board. It was in this context that the Saad Construction Court stated that Saad might be collaterally estopped from raising issues already litigated in the arbitration proceeding.